The document below is hereby signed.

Signed: September 23, 2016



_S. Martin Teel Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| TRIGEE FOUNDATION, INC., | ) | Case No. 12-00624 |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| TRIGEE FOUNDATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 16-10025 |
| LERCH, EARLY & BREWER, | ) | |
| CHTD., _et al._, | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |
| Defendants. | ) | |

MEMORANDUM DECISION RE
DEFENDANTS' MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT RE ALLEGATIONS ARISING
<u>FROM PROFESSIONAL SERVICES PERFORMED THROUGH JUNE 30, 2013</u>

In its complaint, the plaintiff, Trigee Foundation, Inc.,

pursues malpractice claims against the defendants, the law firm

of Lerch, Early & Brewer, Chtd. ("Lerch Early") and Jeffrey M.

Sherman, who was an attorney in Lerch Early through the last work

week of June 2013, and then resumed representation of Trigee

starting in July 2013 as a solo practitioner.  Trigee asserts

that Lerch Early and Sherman committed malpractice, as attorneys,
in the representation of Trigee in its bankruptcy case in this
court, the U.S. Bankruptcy Court for the District of Columbia,
Case No. 12-00624.  Regarding the part of the claims relating to
professional services performed through June 30, 2013, Lerch
Early and Sherman have filed a motion pursuant to Fed. Civ. P.
12(b)(6) and Fed. R. Civ. P. 56 to dismiss Trigee's claims for
failure to state a claim or, in the alternative, for partial
summary judgment dismissing those claims.  The motion will be
granted on the basis that: (1) the claims of malpractice are
barred by the res judicata effect of this court's order granting
the final fee application of Lerch Early and Sherman for legal
services rendered through June 30, 2013, and (2) the complaint
fails to otherwise state a claim upon which relief can be
granted.

I

SUMMARY OF FACTS PERTINENT TO RES JUDICATA DEFENSE

The defendants' motion rests in part on the defense of res
judicata.  The following facts, pertinent to that defense, are
not in genuine dispute or have been pled in Trigee's complaint or
raised by Trigee via an affidavit in opposition to the motion.
On September 12, 2012, Trigee formally retained Lerch Early and
Sherman to represent Trigee in a case under Chapter 11 of the
Bankruptcy Code (11 U.S.C.).  On September 13, 2012, Sherman and

Lerch Early filed a Chapter 11 voluntary petition in the Bankruptcy Court on Trigee's behalf, commencing Case No. 12-00624.   On September 17, 2012, Sherman and Lerch Early filed on Trigee's behalf an application to employ Sherman and Lerch Early, and on October 2, 2012, the Bankruptcy Court granted the application.   On November 20, 2012, Sherman and Lerch Early filed an application for compensation for the period September 2012 through October 2012 (the "*First Application*"), along with a notice of opportunity to object.   After no objection was filed, the Bankruptcy Court on December 17, 2012, granted the *First Application*, and directed Trigee to pay Lerch Early the approved fees.

On December 12, 2012, Sherman and Lerch Early filed a proposed plan on behalf of Trigee, but did not file a disclosure statement relating to the plan.   Lerch Early failed to file a disclosure statement despite Trigee's repeated written and verbal inquiries suggesting Lerch Early file one.   Sherman repeatedly stated that a "place holder plan" was fine and was "done all the time."

On February 28, 2013, a creditor, Blackburne and Brown Mortgage Fund I ("Blackburne"), which held a first priority lien on Trigee's property by virtue of its deed of trust, filed a motion for relief from the automatic stay of 11 U.S.C. § 362(a) to permit it to proceed with a foreclosure sale.   Sherman told

3

Trigee that "Trigee is not required to file a disclosure under bankruptcy law" and therefore Blackburne's motion to lift the stay was not a problem.  On March 8, 2013, a second creditor, Blockacre Enterprises, LLC ("Blockacre"), which held tax sale certificates against Trigee's property, also moved for relief from the stay to permit it to proceed with litigation to enforce those certificates.  On Trigee's behalf, Sherman and Lerch Early filed timely oppositions to the creditors' motions for relief from stay.  On April 4 and 5, 2013, the Bankruptcy Court conducted a hearing on the motions for relief from stay.  On April 8, 2013, the Bankruptcy Court issued its *Memorandum Decision re Motions for Relief From the Automatic Stay* ("*Memorandum Decision*"), concluding that the two motions should be granted, and stating, among other things, that:

(a) Trigee, as the debtor in a "single asset real estate" case, was required to file, within 90 days of the case's commencement, a reorganization plan that had "a reasonable possibility of being confirmed within a reasonable time" (*id.* at 2-3);

(b) Trigee's failure to file a disclosure statement had "stalled" the confirmation process, so that Trigee's reorganization plan was not confirmable within a reasonable time (*id.* at 3, 8); and

(c) because Trigee had not commenced making

certain monthly payments to Blackburne and had not

shown that confirmation of a plan will occur within a

reasonable time, relief from the stay under 11 U.S.C.

§ 362(d)(3) was appropriate (*id.* at 3-4, 8).

The Bankruptcy Court additionally noted that "[t]he debtor's

exclusive right to file a plan ha[d] expired because the debtor

did not obtain acceptance of a plan within 180 days after the

commencement of the case." *Id.* at 4.  In later discussing KH

Funding Company ("KH"), which held a second deed of trust against

Trigee's properties and wanted Trigee to sell the properties

rather than allow them to proceed to foreclosure, the Bankruptcy

Court stated that "the debtor's exclusivity period has expired.

KH can file a plan calling for a sale of the debtor's properties.

Such a plan usually can be confirmed relatively quickly." *Id.* at

9.

On April 11, 2013, the Bankruptcy Court issued (1) an *Order*

*Granting Motion for Relief from Stay* permitting Blackburne to

pursue foreclosure if KH did not, by deadlines set by the *Order*,

pursue and obtain confirmation of a plan calling for a sale of

Trigee's properties, and (2) an *Order re Motion of Blockacre*

*Enterprises, L.L.C. for Relief from the Automatic Stay*,

permitting Blockacre to pursue enforcement of its tax

5

certificates as to any property sold by Blackburne at a
foreclosure sale.[1]

Trigee contends that the conduct of Sherman and Lerch Early
in not preventing the lifting of the automatic stay and in
allowing Trigee's exclusivity period to expire was malpractice.
Sherman and Lerch Early place the blame on Trigee for those
events occurring, and deny that there was malpractice.  However,
their dispute as to fault and whether there was malpractice is
irrelevant for purposes of resolving the instant motion; it is
only necessary to address whether, if there *was* malpractice, res
judicata bars the malpractice claims.

Trigee's principals learned of the Bankruptcy Court's April
8, 2013 *Memorandum Decision* and April 11, 2013 *Orders* on or near
those dates.  The Clerk of the Bankruptcy Court, through the
Bankruptcy Noticing Center, mailed copies of the *Memorandum
Decision* and *Orders* directly to Trigee on April 10 and 13, 2013,
respectively.  Sherman discussed the *Memorandum Decision* and
*Orders* with Trigee's principals in April 2013, but Trigee
vehemently contests that Sherman and Lerch Early ever adequately
informed Trigee of the implications of the *Orders* of April 11,

---

[1] Trigee refers to the *Orders* as having lifted the
automatic stay.  It would be more accurate to refer to the *Orders*
as having conditionally lifted the automatic stay because they
provided that the automatic stay would terminate if certain
events occurred.  However, for ease of discussion I will use
Trigee's characterization of the *Orders* as having lifted the
automatic stay.

2013.  Sherman and Lerch Early represented to Trigee that despite
the adverse ruling Trigee could still seek relief under Chapter
11 of the Bankruptcy Code.

On April 22, 2013, KH filed a proposed plan and a disclosure
statement, and on May 1, 2013, KH mailed to Trigee a copy of the
notice of a hearing regarding the disclosure statement.  Lerch
Early filed an objection to the disclosure statement on May 15,
2013.

On May 24, 2013, Sherman and Lerch Early filed an
application for compensation for the period November 2012 through
April 2013 (the "*Second Application*"), along with a notice of
opportunity to object.  On the same day, Sherman and Lerch Early
sent Trigee a copy of the *Second Application*.  After a creditor
filed an objection to the *Second Application*, the Bankruptcy
Court on June 18, 2013, granted the *Second Application* in
pertinent part.

Sherman ceased being an employee of Lerch Early as of Friday
June 28, 2013.[2]  On July 3, 2013, Sherman moved on Trigee's
behalf to substitute the Law Offices of Jeffrey M. Sherman for
Lerch Early as Trigee's counsel.  On July 10, 2013, the
Bankruptcy Court issued an order granting Trigee's motion to

---

[2]  Lerch Early viewed Sherman's employment as ending Sunday
June 30, 2013, but either way, Lerch Early's final fee
application for the period ending June 30, 2013, covered all
services Sherman performed as a Lerch Early employee.

substitute counsel; approving Trigee's retention of the Law
Offices of Jeffrey M. Sherman; and striking Lerch Early's
appearance.

On July 29, 2013, the Bankruptcy Court approved a
settlement between Trigee and KH that Trigee now claims caused it
harm.  On August 7, 2013, the Bankruptcy Court entered an *Order
Approving Secured Borrowing* pursuant to which Trigee refinanced
its secured debt and paid the claims of Blackburne, Blockacre,
and KH.

During a November 13, 2013 hearing on Trigee's disclosure
statement regarding an amended plan Trigee had filed, counsel for
an unsecured creditor, SGA Companies, Inc. ("SGA"), stated on the
record that SGA might file a competing reorganization plan.  The
Bankruptcy Court indicated at the hearing that SGA could file a
competing plan by December 16, 2013.  On December 12, 2013, SGA
moved to extend the deadline for filing a competing
reorganization plan, which motion the Bankruptcy Court granted on
December 17, 2013.[3]  In November and December 2013, Sherman
notified one or more of Trigee's principals that SGA had stated
it might file a competing reorganization plan.  However, Trigee

---

[3]  The Bankruptcy Court's docket reflects that on December
19, 2013, the Clerk, through the Bankruptcy Noticing Center,
mailed to Trigee a copy of the order granting SGA's motion to
extend the filing deadline for a competing plan of
reorganization.

asserts that Sherman never informed Trigee of the implications of SGA's intent to file a competing plan.

On January 10, 2014, Lerch Early, as Trigee's former counsel, filed a final application for approval of compensation for the period May 2013 through June 2013 (the "*Final Application*"), along with a notice of opportunity to object.  The *Final Application* included time billed for services rendered by Sherman as a Lerch Early attorney during the period May 2013 through June 30, 2013.  On the day that Lerch Early filed the *Final Application*, Lerch Early sent Trigee a copy of the *Final Application*.

On February 3, 2014, SGA filed a competing reorganization plan.  Trigee did not object to Lerch Early's *Final Application*, and on February 4, 2014, the Bankruptcy Court issued its *Order Granting Final Application for Approval of Compensation for Lerch, Early & Brewer for the Period May 2013 Through June 2013* ("*Order Granting Final Application*") and directing Trigee to pay Lerch Early the approved fees.

The docket in Trigee's bankruptcy case reflects that the Law Offices of Jeffrey M. Sherman represented Trigee for the remainder of the case, which the Bankruptcy Court ultimately dismissed at Trigee's request on September 10, 2014.

9

II

TRIGEE'S COMPLAINT

On March 2, 2016, Trigee filed its complaint against Sherman and Lerch Early for alleged legal malpractice in the Superior Court of the District of Columbia, commencing a civil action. Sherman and Lerch Early removed the civil action to the Bankruptcy Court, where it was assigned Adversary Proceeding No. 16-10025.

Trigee's complaint alleges that Trigee retained Sherman and Lerch Early on or about September 4, 2012 to represent it in connection with a bankruptcy proceeding and all related matters. Compl. ¶ 8. The complaint asserts that, within 90 days of the filing of Trigee's Chapter 11 petition on September 13, 2012 (that is, no later than December 12, 2012), Trigee was obligated to file:

> (a) a detailed reorganization plan to pay creditors' claims over a fixed period of time; and

> (b) a disclosure statement designed to provide "adequate information" to creditors to enable them to evaluate Trigee's Chapter 11 reorganization plan.

*Id.* at ¶¶ 9, 14.  Trigee alleges that, although Sherman and Lerch Early timely filed a "placeholder" reorganization plan, they did not file the required disclosure statement and "failed to follow

requirements for the Plan and related Bankruptcy Code

provisions." *Id.* at ¶¶ 14-15.

Trigee alleges that those purported omissions in 2012

resulted in Blackburne and Blockacre filing their motions for

relief from stay in February and March 2013, respectively. *Id.*

at ¶ 16.  Defendants allegedly

> did not competently prepare a full opposition to the
> creditors' [m]otions nor for the lift stay hearing.  For
> example, Defendants did not properly prepare Trigee
> personnel, did not get testimony of Trigee's Certified
> Public Accountant, and did not submit all available
> evidence that would have helped defeat the Motion.
> Blackburne and Trigee had a cash collateral agreement
> between them, an agreement to use money to do capital
> improvements in lieu of paying the lienholder:
> Biackburne.  Defendants should have made more argument
> about the agreement, but didn't.  Defendants also failed
> to file any amended Plan.

*Id.* at ¶ 26.  The Bankruptcy Court decided to grant the motions

for relief from stay in its *Memorandum Decision* issued on April

8, 2013.  *Id.* at ¶¶ 18-22.  According to Trigee, "the Court's

lifting of the [a]utomatic stay and the resulting loss of

bankruptcy protections caused a cascade of adverse events." *Id.*

at ¶ 23.  Thus, the centerpiece of Trigee's malpractice claim is

the Bankruptcy Court's April 2013 ruling, of which Trigee was on

actual notice at that time, and which came (a) over a month

before the *Second Application*'s filing and (b) nine months before

the *Final Application*'s filing.  As to the "cascade of adverse

events," Trigee alleges:

Trigee's financial situation became much more precarious.
Creditors made claims in a chain reaction that forced
Trigee to take actions that increased its costs and
damages.  Trigee had to scramble to get refinancing in
the middle of the bankruptcy - at less than favorable
terms.  The lifting of the Automatic Stay gave creditors
more leverage to file more claims and plans.  Creditors
were claiming full payments, more interest, and
additional legal fees and expenses, and were applying
more pressure and requiring faster action.  Defendants
Lerch Early and Sherman had more legal work to do;
defendants' legal fees and expenses charged to Trigee
escalated.

*Id.* at ¶ 24.  The refinancing occurred in August 2013,[4] well

before the filing of the *Final Application* in January 2014, and

that refinancing resulted in Trigee satisfying, in August 2013,

the claim of Blackburne; the claim of KH (which, as discussed

earlier, had filed a plan on April 22, 2013, after the automatic

stay had been lifted); and the tax sale certificate belonging to

Blockacre.[5]  If the refinancing was on "less than favorable

terms" and the payments to creditors pursuant to the refinancing

was "faster action" than Trigee would have liked, Trigee was well

---

[4]  The only refinancing for which Trigee obtained Bankruptcy
Court approval (as required by 11 U.S.C. § 364) was pursuant to a
motion filed on July 5, 2013, which the Bankruptcy Court granted
by an *Order Approving Secured Borrowing* entered on August 7,
2013.

[5]  The *Order Approving Secured Borrowing* called for these
claims to be satisfied incident to the refinancing.  On August
30, 2013, Trigee filed an objection to the claims of these
creditors on the basis that they had been paid, and on December
13, 2013, the Bankruptcy Court entered an order sustaining that
objection.

aware of that having occurred in August 2013, long before the filing of the *Final Application* in January 2014.

Paragraph 27 of the complaint alleges that, as a result of Trigee having failed to file a confirmable plan, SGA was able to file a competing reorganization plan.  It also alleges that, in objecting to SGA's claim, Sherman and Lerch Early failed to raise a statute of limitations defense and other defenses.  *See id.* However, Trigee's objection to SGA's claim was filed on August 30, 2013, and is therefore beyond the scope of the instant motion, which is limited to services rendered through June 30, 2016.[6]  Similarly, paragraph 29 of the complaint relates to a tax lien case against Blockacre that Sherman filed on Trigee's behalf on December 13, 2013, which is therefore also beyond the scope of the instant motion.

Paragraph 28 of the complaint alleges that Sherman and Lerch Early failed to inform Trigee, before Trigee retained them for its bankruptcy case, that they had a conflict—namely, that prior to their coming to Lerch Early, Sherman and another Lerch Early

---

[6]   The Bankruptcy Court overruled that objection by an order entered on November 26, 2013.  Trigee, through Sherman, filed a motion on April 14, 2014, to reconsider that order, and the Bankruptcy Court denied that motion on June 2, 2014.

attorney had represented Blackburne against Trigee.[7]  The

complaint does not allege if or how the purported conflict of

interest (1) affected Sherman's and Lerch Early's representation

of Trigee, or (2) caused any damage to Trigee.

The complaint's final factual allegations concern KH, which

held a second deed of trust on Trigee's property.  *Id.* at ¶¶

30-33.  Trigee asserts that, after the automatic stay was

modified on April 11, 2013, KH withdrew its prior willingness to

enter into a settlement agreement that would have resolved KH's

claims against a Trigee principal (Johnnie Mae Durant) and 1929

16th Street, NW, LLC.  *Id.* at ¶ 31.  According to Trigee, the

loss of the so-called "global deal" that would have included Mrs.

Durant and 1929 16th Street, NW, LLC has "adversely impacted

Trigee and Mrs. Durant, including damaging the [sic] financial

stability and credit standing."  *Id.* at ¶ 32.  The complaint does

not contain any further allegations about any damage suffered by

Trigee as a result of the loss of the "global deal" that would

have included Mrs. Durant and 1929 16th Street, NW, LLC.  In any

event, the alleged loss of the "global deal" occurred in July

2013 (well before the filing of the *Final Application* in January

_____

        [7]  In each of three letters, dated October 14, 2009, May 28,
2010, and June 10, 2010, Sherman, acting on behalf of Blackburne,
threatened to commence foreclosure proceedings against Trigee's
property if payment of the obligation to Blackburne was not made
within ten days of the date of the letter.

2014) when the Bankruptcy Court approved a settlement with KH
that did not include a global deal.[8]

The complaint contains three counts.  Count I alleges
negligence (*id.* at ¶¶ 37-43); Count II is for contractual breach
(*id.* at ¶¶ 44-47); and Count III is for negligent supervision
(*id.* at ¶¶ 48-50).  Each count demands $5 million in compensatory
damages, disgorgement of legal fees, and other relief.

III

THE RES JUDICATA EFFECT OF AN
ORDER GRANTING A FINAL FEE APPLICATION

The U.S. Court of Appeals for this circuit and those of
three other circuits have held that when a debtor was on actual
or constructive notice of the alleged malpractice of a
professional when the professional's final fee application was
filed, the Bankruptcy Court's approval of the professional's
final fee application operated as a res judicata bar to the
debtor's subsequent malpractice claim challenging the quality of
the services that were the subject of the final fee application
and the previous interim fee applications allowed by the
Bankruptcy Court.  *See Capitol Hill Group v. Pillsbury, Winthrop,*

---

[8]   On July 29, 2013, the Bankruptcy Court approved a
settlement with KH that preserved "any and all claims . . . in
connection with that property located at 1929 16th Street, NW,
Washington, DC, [and] the Promissory Note between Johnnie Durant
and KH entered into as of March 21, 2005 (as modified or
amended)," and provided that "all rights, claims, and defenses of
Johnnie Durant, KH, and 1929 16th Street, LLC, with respect
thereto are expressly reserved."

*Shaw, Pittman, LLC*, 569 F.3d 485, 490-92 (D.C. Cir. 2009); *see also Grausz v. Englander*, 321 F.3d 467, 472-75 (4th Cir. 2003); *Iannochino v. Rodolakis (In re Iannochino)*, 242 F.3d 36, 47-49 (1st Cir. 2001); *Osherow v. Ernst & Young LLP (In re Intelogic Trace, Inc.)*, 200 F.3d 382, 387-88 (5th Cir. 2000). No federal appellate court or federal trial court has rejected the rule recognized in the D.C., First, Fourth, and Fifth Circuits in the above-cited cases.

In *Capitol Hill Group*, a former bankruptcy debtor filed suit in the Superior Court of the District of Columbia against the debtor's former counsel. 569 F.3d at 487. After removing the malpractice case to the U.S. District Court for the District of Columbia, the law firm filed a motion for summary judgment based on the ground of res judicata. *Id.* at 487-88. The District Court granted the motion (*see Capitol Hill Group v. Pillsbury Winthrop Shaw Pittman, LLP*, 574 F. Supp.2d 143 (D.D.C. 2008)), and the debtor appealed. *Id.* On appeal, the Court of Appeals began its analysis by reciting the familiar four elements of res judicata or claim preclusion. Under the doctrine:

> a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction.

569 F.3d at 490 (quoting *Smalls v. United States*, 471 F.3d 186,

192 (D.C. Cir. 2006) (quotation marks omitted)).  The Court of

Appeals continued:

> As the district court explained, "there is an identity of
> the causes of action when the cases are based on the
> 'same nucleus of facts' because 'it is the facts
> surrounding the transaction or occurrence which operate
> to constitute the cause of action, not the legal theory
> on which a litigant relies.'" [*Capitol Hill Group v.
> Pillsbury Winthrop Shaw Pittman, LLP*], 574 F. Supp.2d at
> 149 [internal citation omitted].   Put a little more
> pithily, "claim preclusion precludes the litigation of
> *claims*, not just *arguments*." *NRDC v. EPA*, 513 F.3d 257,
> 261 (D.C. Cir. 2008); *see also id.* ("[C]laim preclusion
> is also intended to prevent litigation of matters that
> *should have been* raised in earlier suit.").

569 F.3d at 490 (emphases in original).

Addressing whether the subsequent malpractice claim involved

the same cause of action as the fee petition in the Bankruptcy

Court, the Court of Appeals in *Capitol Hill Group* stated, "'[w]e

look at the date the final fee order was entered . . . and ask

whether by that time [the debtor] knew or should have known there

was a real likelihood that [it] had a malpractice claim.'"  569

F.3d at 491 (quoting *Grausz*, 321 F.3d at 474).  Applying that

standard, the Court of Appeals reasoned:

> As in the *Osherow* case, here CHG "was sufficiently aware
> of the real possibility of there being errors by [the
> bankruptcy professional] such as now alleged and of their
> likely consequences before the fee hearing." 200 F.3d at
> 388.  "[R]ather than considering whether the [debtors]
> knew of the precise legal contours of their malpractice
> claim at the time of the fee application, we must instead
> determine whether they knew of the *factual basis* of that
> claim." *Iannochino*, 242 F.3d at 48-49.

569 F.3d at 491 (emphasis added).

Echoing the analyses of the other Courts of Appeals that have adopted the rule set forth in § 22(2)(b) of the *Restatement (Second) of Judgments*, the Court of Appeals found that res judicata bars a malpractice claim that would have been a permissive (as opposed to compulsory) counterclaim in a prior proceeding when, *inter alia*:

> "the relationship between the counterclaim and the plaintiff's claim is such that the successful prosecution of the second action would nullify the initial judgment or impair the rights established in the initial action." [*Iannochino*, 242 F.3d] at 42 (quoting RESTATEMENT (SECOND OF JUDGMENTS) § 22(2)(b)). . . . [I]f allowing a permissive counterclaim to go forward would nullify the earlier judgment or impair rights established in the earlier action, even a permissive counterclaim can be barred.

569 F.3d at 492.  Concluding its decision, the Court of Appeals held:

> To allow [Capitol Hill Group] to litigate malpractice claims against Shaw Pittman now, based on the same representation [as was the subject of the fee petition], would nullify the initial judgment or impair the rights established by Shaw Pittman in the bankruptcy fee litigation.  Unlike in regular civil litigation, "[i]n bankruptcy . . . a successful malpractice action could impair rights that [the bankruptcy professionals] had gained from the order awarding them fees.  Under the relevant section of the bankruptcy code governing fee awards, a finding of malpractice would mean that the attorneys were not entitled to compensation for those services found to be substandard." *Iannochino*, 242 F.3d at 42-43 (internal citation omitted); *see Southmark Corp. [v. Coopers & Lybrand (In re Southmark)]*, 163 F.3d [925,] 931 [(5th Cir. 1999)] ("Award of the professionals' fees and enforcement of the appropriate standards of conduct are inseparably related functions of bankruptcy courts.").

569 F.3d at 492-93.  The Court of Appeals affirmed the dismissal of Capitol Hill Group's civil action for malpractice.  569 F.3d at 493.

IV

RES JUDICATA AS APPLIED TO THIS CASE

Applying the rule of *Capitol Hill Group*, *Grausz*, *Iannochino*, and *Osherow* to Trigee's Chapter 11 case and to Trigee's complaint for alleged legal malpractice, the court must dismiss Trigee's complaint as barred by res judicata with respect to claims of malpractice arising from the professional services that Sherman and Lerch Early provided to Trigee through June 30, 2013.  When Lerch Early filed its *Final Application* in January 2014, Trigee had actual notice of any claim it had for malpractice regarding Sherman's and Lerch Early's services through June 30, 2013, but it failed to raise any issue concerning the quality of the pertinent work.  Res judicata accordingly applies to the *Order Granting Final Application* and bars any such claim.

    A. Trigee's Claim Regarding the Lifting of the Stay is
       Barred by Res Judicata.

Res judicata bars Trigee's centerpiece allegation that Sherman and Lerch Early are liable for the damages flowing from the Bankruptcy Court's April 8, 2013 *Memorandum Decision* and April 11, 2013 *Orders* granting Blackburne's and Blockacre's motions to lift the automatic stay.  Immediately upon the stay being lifted in April 2013, Trigee received actual notice (from

19

both Sherman and the Clerk of the Bankruptcy Court) of the
*Memorandum Decision* and *Orders* lifting the automatic stay.  The
Bankruptcy Court's ruling was inconsistent with the advice
Sherman had allegedly given Trigee—that Trigee was "'not required
to file a disclosure under bankruptcy law' and therefore
Blackburne's motion to lift the stay was not a problem."
Accordingly, Trigee was aware by April 2013 of the factual basis
of any malpractice claim based on the automatic stay having been
lifted.

    Nonetheless, Trigee failed to object to Sherman's and Lerch
Early's May 24, 2013 *Second Application* for compensation for
their services from November 2012 through April 2013, which the
Bankruptcy Court granted on June 18, 2013.  The order granting
the *Second Application* was an interim order, such that claims of
malpractice regarding services provided during the dates covered
by the *Second Application* could have been raised as an objection
not only to the *Second Application* but also to the *Final
Application* ultimately filed in January 2014.

    When the *Final Application* was filed in January 2014, Trigee
was aware of any malpractice that may have occurred to contribute
to the unfavorable rulings in April 2013, of which it had become
aware in April 2013, and had already seen adverse consequences
flowing from such alleged malpractice.  By the summer of 2013,
Trigee was well aware of the ensuing "cascade of adverse events"

set into motion by the Bankruptcy Court's conditional lifting of the automatic stay, including the refinancing in August 2013 that Trigee has characterized as being on less than favorable terms, and KH's filing of a competing plan to protect its interests in the face of a possible foreclosure by Blackburne.  Nevertheless, when Sherman and Lerch Early filed their *Final Application* on January 10, 2014, for services through June 30, 2013, Trigee again failed to object, and the Bankruptcy Court granted the *Final Application* on February 4, 2014.

Based on the res judicata effect of the *Order Granting Final Application*, Trigee cannot state a viable claim for any damages flowing from the lifting of the stay in early April 2013.  *See Capitol Hill Group*, 569 F.3d at 491 (applying res judicata where the debtor knew the factual basis of the malpractice claim prior to the final fee award).  To hold otherwise would risk nullifying the Bankruptcy Court's *Order Granting Final Application* and impairing the rights that Sherman and Lerch Early established in Trigee's bankruptcy case pursuant to that *Order*, including approved compensation for work performed through June 30, 2013. *See id.* at 492 (ruling claims should be barred if they would nullify the prior Bankruptcy Court final order allowing fees or impair rights established by that order).

B. Trigee's Allegations Relating to SGA are Barred by Res Judicata.

Trigee's Chapter 11 docket confirms that, just like Trigee's allegations relating to lifting of the stay, Trigee's allegations relating to SGA are barred by res judicata. The gist of Trigee's allegations about SGA is that Sherman and Lerch Early should be held liable for having allowed SGA to file a competing reorganization plan. Compl. ¶¶ 27, 40-43. However, the Bankruptcy Court's *Memorandum Decision* of April 8, 2013, clearly notified Trigee that its exclusivity period had expired and that other parties in interest were therefore free to propose plans.

Indeed, even prior to the filing of the *Second Application* in May 2013 Trigee had already experienced one adverse consequence as a result of its exclusivity period having expired. By then, KH had filed a competing proposed plan. Yet Trigee did not object to the *Second Application*.

Before the filing of the *Final Application* in January 2014, Trigee was aware of the additional adverse consequences flowing from its loss of exclusivity. In the summer of 2013, Trigee was put to the burden of dealing with KH's proposed plan until it was able to refinance the secured claims of KH and Blackburne against its properties in August 2013 on what Trigee contends were less than favorable terms. Moreover, SGA first notified Trigee of its intention to file a competing plan at a November 13, 2013 hearing, and SGA confirmed that intention to Trigee by filing its

22

December 12, 2013 motion for extension of time to file a
competing plan.  Sherman promptly communicated SGA's intention to
Trigee after SGA's motion was filed.

Nonetheless, after Lerch Early filed the *Final Application*
on January 10, 2014, Trigee failed to object to the *Final
Application* or raise concerns about the adequacy of its legal
representation.  As discussed, the Bankruptcy Court granted the
*Final Application* on February 4, 2014.  Trigee knew long before
the granting of the *Final Application* on February 4, 2014, that
Sherman and Lerch Early had allowed Trigee's exclusivity period
to expire, and that SGA had stated its intent to file a competing
plan due to the expiration of Trigee's exclusivity period.
Having known by then of the factual basis for raising a claim of
malpractice regarding SGA being allowed to file a competing plan,
res judicata bars Trigee's assertion of such a claim.  *See
Capitol Hill Group*, 569 F.3d at 491 (quoting *Grausz*, 321 F.3d at
474) ("We look at the date the final fee order was entered . . .
and ask whether by that time [the debtor] knew or should have
known there was a real likelihood that [it] had a malpractice
claim.").

> C.   The Claim Regarding the Loss of a Global Deal with
>      KH Fails to Adequately Allege Harm to Trigee and
>      Regardless is Barred by Res Judicata.

Trigee's claim regarding a global deal with KH is that Mrs.
Durant and 1929 16th Street, NW, LLC suffered harm when KH

excluded them from the eventual settlement agreement between KH and Trigee. *See* Compl. ¶¶. 30-33. That allegation does not include a logical explanation of how Trigee suffered any cognizable harm in its own right as an entity distinct from Mrs. Durant and 1929 16th Street, NW, LLC. Trigee's conclusory allegations of purported damage to Mrs. Durant's and Trigee's "financial stability and credit standing" are insufficient to state a claim regarding damage to Trigee. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (instructing that a court must disregard "a legal conclusion couched as a factual allegation").

In any event, res judicata bars this claim as well. In July 2013, the Bankruptcy Court approved the settlement between KH and Trigee. The approved settlement did not include releases regarding "any and all claims . . . in connection with that property located at 1929 16th Street, NW, Washington, DC, [and] the Promissory Note between Johnnie Durant and KH entered into as of March 21, 2005 (as modified or amended)," and it provided that "all rights, claims, and defenses of Johnnie Durant, KH, and 1929 16th Street, LLC, with respect thereto are expressly reserved." The loss of any "global deal" and any errors that led to that loss occurred well before the filing of the *Final Application* in January 2014. Trigee's failure to object to the *Final Application* based on the loss of a "global deal" results in res judicata barring its malpractice claim relating to that loss.

24

> D. Sherman's and Lerch Early's Failure to Disclose
> The Previous Representation of Blackburne Was Not
> Itself Malpractice and Does Not Allow Trigee to
> Overcome Res Judicata for its Other Claims.

Trigee has alleged that Sherman and Lerch Early failed to disclose the prior representation of Blackburne, in foreclosure efforts against Trigee, by Sherman and another Lerch Early attorney, John Tsikerdanos. Compl. ¶¶ 28, 40-43. As discussed below, these allegations (1) do not themselves state a claim of malpractice, and (2) have no impact on the res judicata effect of the *Order Granting Final Application* as to all alleged acts of malpractice identified in Trigee's complaint.

These allegations do not establish an independent claim upon which relief can be granted. On a motion to dismiss under Rule 12(b)(6), a court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A court must accept the truth of the plaintiff's factual allegations at this stage, but it ought not credit "a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Thus, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content

25

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Trigee's complaint fails to allege an actual conflict *as to Trigee*. The pertinent rules under the District of Columbia Rules of Professional Conduct demonstrate that there was no conflict adverse to Trigee. Rule 1.9 ("Conflict of Interest: Former Client") provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.

Rule 1.7 ("Conflict of Interest: General Rule") provides:

> (a) A lawyer shall not advance two or more adverse positions in the same matter.

> (b) Except as permitted by paragraph (c) below, a lawyer shall not represent a client with respect to a matter if:

>> (1) That matter involves a specific party or parties and a position to be taken by that client in that matter is adverse to a position taken or to be taken by another client in the same matter even though that client is unrepresented or represented by a different lawyer;

>> (2) Such representation will be or is likely to be adversely affected by representation of another client;

>> (3) Representation of another client will be or is likely to be adversely affected by such representation;

>> (4) The lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities

26

to or interests in a third party or the lawyer's own financial, business, property, or personal interests.

(c) A lawyer may represent a client with respect to a matter in the circumstances described in paragraph (b) above if

(1) Each potentially affected client provides informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation; and

(2) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client.

(d) If a conflict not reasonably foreseeable at the outset of representation arises under paragraph (b)(1) after the representation commences, and is not waived under paragraph (c), a lawyer need not withdraw from any representation unless the conflict also arises under paragraphs (b)(2), (b)(3), or (b)(4).

The only "informed consent" obligation pursuant to these Rules was to Blackburne, not to Trigee, to guard against the possibility that Sherman and his colleague had gained confidential information from Blackburne that would be adverse to it in the bankruptcy case.

In any event, under *Twombly*, the alleged conflict and the nondisclosure of the prior representation of Blackburne do not establish a plausible claim of malpractice.  Only claims based on identified acts of substandard services in the representation of Trigee that proximately caused Trigee harm might constitute malpractice claims upon which relief can be granted (if they were not barred by res judicata).  *See Herbin v. Hoeffel*, 806 A.2d

27

186, 194 (D.C. 2002) ("To demonstrate that an attorney has been
negligent, a party must prove: (1) that there is an
attorney-client relationship; (2) that the attorney neglected a
reasonable duty; and (3) that the attorney's negligence resulted
in and was the proximate cause of a loss to the client."
(Citation omitted.)).  The complaint fails to plead facts showing
harm proximately caused by the act of nondisclosure of the prior
representation of Blackburne or the act of representing Trigee
despite any conflict arising from such prior representation.
Such acts were not themselves acts of substandard services that
undermined Trigee's goals in the bankruptcy case.

In an apparent attempt to demonstrate that there was
malpractice due to the nondisclosure of the prior representation
of Blackburne and the asserted conflict arising from such prior
representation, Trigee submitted an affidavit of Trigee's CEO and
primary stockholder, Johnnie Mae Durant.  Referring to Lerch
Early as "LEB" and Sherman as "JMS," Mrs. Durant states:

> 5.   LEB now revealed (in Document 496, page 4
> footnote) that JMS told Shulman Rogers' lawyer, Mr.
> Faller (Blackburne's Counsel) of his conflict, having
> previously represented Blackburne against the interests
> of Trigee.  However, neither JMS nor LEB ever revealed
> any conflict to the court nor to Trigee at any time.
> Therefore, Mr. Faller was aware of JMS and LEB's
> predicament and may have leveraged this fact to zealously
> represent his client by proposing aggressive legal
> motions like lifting the stay.
> 6.   Trigee now knows that JMS, Mr. John Tsikerdanos
> and therefore LEB were compromised by this conflict and
> this likely adversely affected our bankruptcy case and
> limited the efforts by which LEB and JMS and Mr.

28

> Tsikerdanos (and anyone else at LEB we may find later
> through discovery was compromised) represented our cause
> and did not seek to fully and zealously oppose
> Blackburne's efforts to foreclose on Trigee. We now
> conclude that Mr. Sherman's repeated advice to rush and
> pay off Blackburne and other creditors was more his and
> LEB's wish to cover up and quickly exit this predicament
> of conflict without revealing the conflict to Trigee or
> the court.

Even if the complaint were amended to incorporate these
statements, the complaint would still fail to plead facts showing
harm proximately caused by the act of nondisclosure of the prior
representation of Blackburne or the act of representing Trigee
despite any conflict arising from such prior representation.
Those acts would still fail to state a claim upon which relief
could be granted.

Nor do the complaint's allegations regarding the past
representation of Blackburne, even if supplemented by the
allegations in Mrs. Durrant's affidavit, alter the court's
analysis of the res judicata defense. As to the identified acts
of malpractice (the provision of substandard services proximately
causing Trigee harm), res judicata, for reasons already
discussed, bars the claims based on such acts of malpractice.
Accordingly, res judicata bars any such identified claim of
malpractice arising from an alleged failure of Sherman and Lerch
Early "fully and zealously to oppose Blackburne's efforts to
foreclose on Trigee." If, as alleged in Mrs. Durrant's

affidavit, there was a motive for engaging in such malpractice
that would not remove the bar of res judicata.

The failure to disclose the connection to Blackburne may
have consequences within the bankruptcy case by reason of an
apparent violation of Fed. R. Bankr. P. 2014(a), or if there was
a conflict of interest in violation of 11 U.S.C. § 327.   The
order granting the defendants' motion will specify that it does
not bar any relief that may be pursued in the bankruptcy case
based on such a violation.   However, as to the claims of
malpractice asserted in this adversary proceeding, the *Order
Granting Final Application* is a final judgment having res
judicata effect.

Trigee has argued that it should be allowed to take
discovery related to Sherman's and John Tsikerdanos's connection
with Blackburne prior to their representation of Trigee.
However, Trigee has not sufficiently complied with Fed. R. Civ.
P. 56(d) in order to be entitled to take discovery.   In *U.S. ex
rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26 (D.C.
Cir. 2014), the Court of Appeals noted that its decision in
*Convertino v. U.S. Dep't of Justice*, 684 F.3d 93 (D.C. Cir.
2012), "provides the standard for dealing with Rule 56(d)
requests" (footnote omitted).   As stated in *Gov't Acquisitions*,
764 F.3d at 26:

> In *Convertino* we explained that the "movant must submit
> an affidavit which states with sufficient particularity

30

why additional discovery is necessary." *Convertino*, 684
F.3d at 99 (quoting *Ikossi v. Dep't. of Navy*, 516 F.3d
1037, 1045 (D.C. Cir. 2008)) (internal quotation marks
omitted).  We also outlined the three criteria that the
affidavit must satisfy: (1) "[I]t must outline the
particular facts [the non-movant] intends to discover and
describe why those facts are necessary to the
litigation," *id.* at 99; (2) "it must explain 'why [the
non-movant] could not produce the facts in opposition to
the motion for summary judgment,'" *id.* at 99-100 (quoting
*Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 237
(D.C. Cir. 1999)); and (3) "it must show the information
is in fact discoverable," *id.* at 100.

Trigee has not complied with that standard, and the request must
therefore be denied.

First, Trigee has not filed an affidavit or declaration in
compliance with Fed. R. Civ. P. 56(d) showing that "for specified
reasons, it cannot present facts essential to justify its
opposition" to the defendants' motion for summary judgment.[9]  *See*
*CareToLive v. FDA*, 631 F.3d 336, 344-45 (6th Cir. 2011) (finding
that a statement of need for discovery failed to comply with Rule

---

[9]  Then-Rule 56(f) addressed in *Covertino* explicitly
required an affidavit and did not mention submitting a
declaration, but Rule 56(d) "carrie[d] forward without
substantial change the provisions of former subdivision (f)."
*See* Fed. R. Civ. P. 56  Advisory Committee's Note to the 2010
amendments. It is thus evident that a "declaration" under Rule
56(d) means a declaration signed under penalty of perjury, which,
under 28 U.S.C. § 1746, has the same "force and effect" as an
affidavit.  Moreover, the Advisory Committee's Notes to the 2010
amendment of Rule 56(c) (that added the term "declaration" to
that rule) note that a formal affidavit is no longer required to
support or oppose a motion for summary judgment, and that § 1746
now permits a declaration under that provision to substitute for
an affidavit.  Rule 56(d), like Rule 56(c), ought to be read as
treating the term "declaration" as meaning a § 1746 declaration.

56(d) because it was not an affidavit or a declaration signed
under penalty of perjury under 28 U.S.C. § 1746).

Second, discovery would not result in finding evidence that
could undo the res judicata effect of the *Order Granting Final
Application*.  Whatever facts Trigee seeks to discover are not
"necessary to the litigation" because res judicata bars the
malpractice claims.

E.   Trigee's Arguments Against Application of Res
     Judicata

Trigee raises three principal arguments against the
applicability of res judicata.  First, it argues that Sherman and
Lerch Early have not shown that they notified Trigee of "the
implications of their errors" that led to the automatic stay
being lifted and the ensuing "cascade of adverse events."  Compl.
¶ 23; Oppos'n Mem. (Dkt. No. 14) 4.  Trigee's contention is
meritless because binding authority establishes that notice of a
malpractice claim hinges only on knowledge of the claim's factual
basis, not the claim's precise legal contours.  *See Capitol Hill
Group*, 569 F.3d at 490-92 (quoting *Iannochino*, 242 F.3d at 48-49)
("'[R]ather than considering whether the [debtors] knew of the
precise legal contours of their malpractice claim at the time of
the fee application, we must instead determine whether they knew
of the factual basis of that claim.'").

Trigee had ample knowledge of the factual bases of the
current claims prior to the Bankruptcy Court's approval of both

32

the *Second* and *Final Applications*.   In its *Memorandum Decision* of
April 8, 2013, of which Trigee was aware in April 2013, the
Bankruptcy Court contradicted the incorrect legal advice Trigee
now contends it received from Sherman—namely, that Trigee was not
required to file a disclosure statement.   In that ruling, the
Bankruptcy Court also made clear that Sherman and Lerch Early had
not caused Trigee to take steps to prevent Blackburne and
Blockacre from obtaining relief from the automatic stay.

Additionally, the *Memorandum Decision* of April 8, 2013, made
clear that Lerch Early and Sherman had not taken steps to prevent
Trigee's exclusivity period from expiring (with the consequence
that creditors were free to file their own proposed plans).
Moreover, by the time of the *Second* and *Final Applications*, KH
had already filed a plan due to the expiration of Trigee's
exclusivity period.   Well before the filing of the *Final
Application*, Trigee was forced to address KH's proposed plan and
its disclosure statement.   Then, in November and December 2013,
Sherman notified one or more of Trigee's principals that SGA
might file a competing plan.   Trigee became aware, once again,
that the termination of Trigee's exclusivity period was putting
Trigee at risk of confirmation of a plan (this time, SGA's) that
was potentially contrary to its interests.   It was also obvious
to Trigee that the expiration of the exclusivity period resulted
in additional burdens on Trigee and its legal representation.

33

Part of the "cascade of adverse events" included that "Lerch Early and Sherman had more legal work to do; defendants' legal fees and expenses charged to Trigee escalated." Compl. ¶ 24. The *Final Application* plainly gave Trigee notice of the escalated legal fees that resulted or could result from the lifting of the automatic stay and the expiration of exclusivity.

Despite all of this, Trigee failed to object to the *Final Application*. Based on the record here, when the *Final Application* was filed, Trigee was on objective notice of its bases for bringing a claim despite Trigee's assertion that Sherman and Lerch Early failed to fully apprise them of the implications of their errors. *See, e.g., Schwab v. Oscar (In re SII Liquidation Co.)*, 2012 WL 4327055 *9-*10 (Bankr. N.D. Ohio. Sept. 20, 2012) (rejecting the argument that plaintiffs "only learned of [their] potential malpractice claim upon consulting current counsel" because the plaintiffs "knew, at the time of the final fee application, of the alleged facts underlying a potential malpractice claim"). Because Trigee was well aware of the factual bases for asserting a claim of malpractice against Sherman and Lerch Early prior to the filing of the *Final Application*, res judicata applies.

Second, Trigee argues that *Capitol Hill Group* is distinguishable from this case because the debtor in that decision had actually contested the final fee application,

34

asserting its dissatisfaction with the services it had received.
In contrast, Trigee did not contest the *Final Application*,
allegedly because it had not been informed by Sherman and Lerch
Early of the full implications of their errors.  Thus, Trigee
argues, it did not have the opportunity to raise objections to
the quality of legal services it had received.  However, when the
debtor in *Capitol Hill Group* sued for malpractice it attempted to
raise new objections to the quality of the law firm's services
that it could have raised when it objected to the final fee
application.  The Court of Appeals held that res judicata barred
the debtor from raising those objections for the first time in
the malpractice action, as it could have raised them when it
objected to the final fee application on other grounds, and
failed to do so.  *See Capitol Hill Group*, 569 F.3d at 491
(quoting *NRDC v. Thomas*, 835 F.2d 1224, 1252 (D.C. Cir. 1988))
("'[R]es judicata . . . bars relitigation not only of matters
determined in a previous litigation but also ones a party could
have raised[.]'").

The same holds true here.  Whatever objections Trigee had to
the quality of the legal services it received, it could have
raised them as objections to the *Final Application*.  Trigee
failed to do so when it was objectively on notice of the
attorneys' alleged errors and the resulting harm they had caused
and continued to cause Trigee.  Thus, res judicata bars its

raising as malpractice claims now those objections that Trigee
did not raise at all.  That the *Order Granting Final Application*
granted the *Final Application* as unopposed, does not change the
result.  *See Riehle v. Margolies*, 279 U.S. 218, 225 (1929) ("A
judgment of a court having jurisdiction of the parties and of the
subject-matter operates as res judicata, in the absence of fraud
or collusion, even if obtained upon a default." (citations
omitted)); *Law Offices of Jerris Leonard, P.C. v. Mideast Sys.,
Ltd.*, 111 F.R.D. 359, 361 (D.D.C. 1986) (ruling that a judgment
in favor of a law firm against its client for attorney's fees, as
a matter of res judicata, barred that client's later malpractice
action even if the client defaulted in the law firm's action to
recover fees).

Third, Trigee argues that res judicata does not apply
because of the District of Columbia's continuous representation
rule, under which, for statute of limitations purposes, the
accrual period for a legal malpractice claim is tolled while the
negligent attorney continues to represent the injured client.
*See R.D.H. Comm., Ltd. v. Winston*, 700 A.2d 766, 768 (D.C. 1997)
(discussing and applying the continuous representation rule,
thereby adopting it in the District of Columbia in relation to
the statute of limitations).  The statute of limitations is not
the issue here; res judicata is.  The court's research has
uncovered no decision in which a court applied the continuous

representation rule to the res judicata effect of a final
judgment awarding attorney's fees.  Trigee seeks to import a rule
of District of Columbia local law concerning the statute of
limitations into the federal law of res judicata.  This cannot be
done for a number of reasons.  As Sherman and Lerch Early note:

> It is fundamental that "[t]he preclusive effect of a
> federal court's judgment issued pursuant to its
> federal-question jurisdiction is governed by the federal
> common law of preclusion." *Wyly v. Weiss*, 697 F.3d 131,
> 140 (2[d] Cir. 2012); *see also Limbach v. Hooven &
> Allison Co.*, 466 U.S. 353, 361-62 (1984) (same); *Maher v.
> GSI Lumonics, Inc.*, 433 F.3d 123, 126 (1[st] Cir. 2005)
> (same); *Athridge v. Aetna Cas. & Sur. Co.*, 351 F.3d 1166,
> 1171 (D.C. Cir. 2003) (preclusive effect of federal court
> litigation is a question of federal law); *Restatement
> (Second) of Judgments* § 87 (1982) ("[f]ederal law
> determines the effects under the rules of res judicata of
> a judgment of a federal court") *and* Illustration 3
> thereto.
>     In *Taylor v. Sturgell*, 553 U.S. [8]80, [8]92 (2008),
> the Supreme Court stated that "[f]or judgments in
> federal-question cases . . . federal courts participate
> in developing 'uniform federal rule[s]' of res judicata
> . . . ." (Quoting *Semtek Int'l Inc. v. Lockheed Martin
> Corp.*, 531 U.S. 497, 508 (2001)).  This principle of
> uniformity extends to judgments entered by a federal
> bankruptcy court applying federal law.  *Iannochino*, 242
> F.3d at 41 (1[st] Cir. 2001).

Reply Mem. 6 (footnote omitted).  The federal appellate courts
that have addressed the preclusive effect of a bankruptcy court's
approval of a fee application recognize that the issue is a
question of federal law with features that are particular to the
bankruptcy context.  As the Court of Appeals concluded in *Capitol
Hill Group*, the prosecution of a subsequent malpractice claim:

> would nullify the initial judgment or impair the rights
> established . . . in the bankruptcy fee litigation.

37

> Unlike in regular civil litigation, "[i]n bankruptcy . .
> . a successful malpractice action could impair rights
> that [the bankruptcy professionals] had gained from the
> order awarding them fees.  Under the relevant section of
> the bankruptcy code governing awards, a finding of
> malpractice would mean that the attorneys were not
> entitled to compensation for those services found to be
> substandard."

569 F.3d at 492 (citation omitted).  Thus, Trigee's reliance on

D.C.'s continuous representation rule is misplaced, not only in

light of well-established principles of federal claim preclusion,

but also in light of the more particular requirements of federal

bankruptcy law and procedure concerning fee applications.  In

addition, it would be unworkable as a practical matter if the

preclusive effect of a bankruptcy court order on a fee

application varied from state to state depending on local law,

rather than being subject to uniform federal rules per Supreme

Court precedent.  *See, e.g., Taylor v. Sturgell*, 553 U.S. 880,

891 (2008).

In any event, the Bankruptcy Court granted Lerch Early's

*Final Application* eight months after striking Lerch Early's

appearance.  If the continuous representation rule were imported

into federal res judicata law regarding the effect of a final fee

application, it could not apply to a party like Lerch Early,

which did not continuously represent the client.  Trigee argues

that Lerch Early is liable under the doctrine of *respondeat

superior* for Sherman's actions, and therefore the continuous

representation rule should apply to Lerch Early.  However,

Sherman was no longer a Lerch Early employee when he continued to represent Trigee.  The doctrine of *respondeat superior* cannot apply to an employer regarding a former employee's conduct after the termination of the employment relationship.

The continuous representation rule similarly ought not deprive Sherman of the res judicata effect of the *Order Granting Final Application*.  Because res judicata bars the claims as to Lerch Early relating to services provided through June 30, 2013, it bars as well their malpractice claims against Sherman regarding those services.  The law is well established that, with exceptions of no relevance here, the res judicata effects of a judgment with respect to claims against an employer extends in favor of an employee with respect to the same claims for which the employer was vicariously liable.  *See* Restatement (Second) of Judgments § 51 (1982); *Brunacini v. Kavanagh*, 869 P.2d 821, 825 (N.M. Ct. App. 1993) (noting that when a law firm had previously brought an action for legal fees, the res judicata effect of the judgment in that action extended to bar a later malpractice action against an employee of the law firm); *Lober v. Moore*, 417 F.2d 714, 718 (D.C. Cir. 1969) ("[A] judgment excusing the master or principal from liability on the ground that the servant or agent was not at fault forecloses a subsequent suit against the latter on the same claim.").

Stated another way, res judicata protects not only Lerch
Early but also Sherman, who, as a Lerch Early employee, was in
privy with Lerch Early. *See Nevada v. United States*, 463 U.S.
110, 129 (1983) (holding that res judicata bars subsequent action
against privy of party who prevailed in prior action); *Henry v.
Farmer City State Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986)
(ruling that res judicata barred claims against employees of a
bank even though the bank was the only plaintiff in the prior
foreclosure proceeding).

The *Order Granting Final Application* related to Sherman's
services as an employee of Lerch Early through June 30, 2013.  It
would not make sense to hold that Trigee's failure to object to
the quality of those services prior to the Bankruptcy Court's
granting the *Final Application* results in res judicata barring
Trigee's claims against Lerch Early but does not result in res
judicata barring Trigee's asserting those same claims against
Sherman due to the continuous representation rule.  The *Order
Granting Final Application* was just as final for Sherman as to
services as a Lerch Early employee rendered through June 30,

40

2013, as it was for Lerch Early.[10]  Having been an employee of
Lerch Early with respect to the services through June 30, 2013,
that are the basis for Trigee's malpractice claims, Sherman is
entitled to the res judicata effects of the final fee award for
services through June 30, 2013, just as is Lerch Early.

IV

THE FINALITY OF THE COURT'S *ORDER GRANTING FINAL
APPLICATION* DESPITE A PENDING MOTION TO VACATE THAT ORDER

Trigee has filed a motion in the bankruptcy case under Fed.
R. Civ. P. 60 to have the *Order Granting Final Application*
vacated.  However, under Fed. R. Civ. P. 60(c)(2), the filing of
a Rule 60 motion "does not [automatically] affect the judgment's
finality or suspend its operation."  The *Order Granting Final
Application* remains effective and operative for res judicata
purposes unless and until the court grants Trigee's Rule 60
motion and vacates the *Order Granting Final Application*.

---

[10]  There is a question whether Sherman's employment at
Lerch Early ceased as of Friday June 28, 2013, instead of Sunday
June 30, 2013.  However, the alleged claims of malpractice set
forth in the complaint as arising from services rendered through
June 30, 2013, had occurred by June 28, 2013.  Accordingly, the
dismissal of the claims relating to professional services
performed through June 30, 2013, will apply to Sherman.  The
remaining claims against Sherman of malpractice arose from
professional services he performed after June 30, 2013.

41

V

CONCLUSION

The court will dismiss Trigee's Complaint with prejudice with respect to claims arising from professional services performed through June 30, 2013, with the dismissal not affecting any relief sought in the bankruptcy case, Case No. 12-0624, based on alleged violations of 11 U.S.C. § 327 and Fed. R. Bankr. P. 2014(a).  An order follows.

[Signed and dated above.]

Copies to: All counsel of record; Office of United States Trustee.

42