The document below is hereby signed.

Signed: May 24, 2021



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| TRIGEE FOUNDATION, INC., | ) | Case No. 12-00624 |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| TRIGEE FOUNDATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 16-10025 |
| LERCH, EARLY & BREWER, | ) | |
| CHTD., _et al._, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM DECISION AND
ORDER RE PLAINTIFF'S RULE 54(b) MOTION FOR
RECONSIDERATION OF ORDER DISMISSING CLAIMS AGAINST
DEFENDANTS THAT ACCRUED PRIOR TO AND THROUGH JUNE 30, 2013

This is an action for legal malpractice brought by Trigee

Foundation, Inc. ("Trigee") against Lerch, Early & Brewer, Chtd.

("Lerch Early") and Jeffrey M. Sherman regarding their services

as counsel for Trigee in its bankruptcy case, Case No. 12-00624

in this court (the "main case"), commenced on September 13,

2012.[1]  Sherman left Lerch Early on Friday, June 28, 2013, and
Trigee elected to proceed to be represented by Sherman as a solo
practitioner in lieu of Lerch Early.[2]  Sherman continued to
represent Trigee until the court dismissed Trigee's bankruptcy
case in September 2014.

Trigee commenced this malpractice action in 2016.  On
September 23, 2016, the court entered an order ("*Dismissal
Order*") dismissing the malpractice damages claims relating to
services provided by the defendants through June 30, 2013.  This
resulted in the dismissal of Lerch Early as a defendant, and the
dismissal of claims against Sherman other than those relating to
services he rendered as a solo practitioner after June 30, 2013.
However, the *Dismissal Order* was not made a final and appealable
order under Fed. R. Civ. P. 54(b).  Trigee seeks reconsideration

---

[1]  Under section 1101(1) of the Bankruptcy Code (11 U.S.C.),
Trigee acted as a debtor in possession in its bankruptcy case,
and under 11 U.S.C. § 1107(a) was generally subject to the duties
of a trustee, including the duty to obtain approval of the
employment of professionals.  Pursuant to 11 U.S.C. § 327(a),
Trigee obtained approval to employ Lerch Early and Sherman as its
attorneys in the bankruptcy case.

[2]  Lerch Early viewed Sherman's employment as ending Sunday,
June 30, 2013, but either way, Lerch Early's final fee
application for the period ending June 30, 2013, covered all
services Sherman performed as a Lerch Early employee.  On July
10, 2013, the court entered an order formally terminating Lerch
Early's appearance on behalf of Trigee in the bankruptcy case,
but the parties have treated Lerch Early's services as having
terminated as of June 30, 2013: only Sherman (who was no longer a
Lerch Early employee after that date) performed services for
Trigee after that date.

of the *Dismissal Order*.  I will deny reconsideration as to Lerch
Early but will vacate the *Dismissal Order* as to Sherman (but on
grounds other than those raised by Trigee).

I

THE *DISMISSAL ORDER* OF SEPTEMBER 13, 2016,
AND THE MOTION FOR RECONSIDERATION OF THAT ORDER

On January 10, 2014, Lerch Early, as Trigee's former
counsel, filed its *Final Application for Approval of Compensation
for Lerch, Early & Brewer for the Period May 2013 Through June
2013* ("*Final Application*") seeking approval under 11 U.S.C.
§ 330(a) of compensation for the period May 2013 through June
2013, along with a notice of opportunity to object.  The *Final
Application* included time billed for services rendered by Sherman
as a Lerch Early attorney during the period May 2013 through June
30, 2013.[3]  On the day that Lerch Early filed the *Final
Application*, Lerch Early sent Trigee a copy of the *Final
Application* with notice of the opportunity to oppose the *Final
Application*.

Trigee did not object to Lerch Early's *Final Application*,
and on February 4, 2014, the court entered its *Order Granting
Final Application for Approval of Compensation for Lerch, Early &
Brewer for the Period May 2013 Through June 2013* ("*Final Fee

---

[3]  The court had previously granted Lerch Early interim
compensation pursuant to 11 U.S.C. § 331 for services rendered
prior to May 2013.

3

*Order*") and directing Trigee to pay Lerch Early the approved fees.

In March 2016, more than a year after the bankruptcy case was dismissed in September 2014, Trigee filed its *Complaint* asserting malpractice damages claims against Lerch Early and Sherman in the Superior Court of the District of Columbia. Lerch Early and Sherman removed that civil action to this court, where it was assigned Adversary Proceeding No. 16-10025. On May 27, 2016, Lerch Early and Sherman filed a *Motion to Dismiss or, in the Alternative, for Summary Judgment on Allegations Arising from Professional Services Performed Through June 30, 2013* ("*Motion to Dismiss*"). On September 23, 2016, the court issued a *Memorandum Decision* addressing that *Motion to Dismiss* and concluding, based on *Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485 (D.C. Cir. 2009), that the *Final Fee Order* in the bankruptcy case had the res judicata (claim preclusive) effect of barring the claims relating to services performed through June 30, 2013.[4] Consequently, also on September 23, 2016, the court entered the *Dismissal Order* dismissing with prejudice the claims arising from professional services performed by Lerch Early and Sherman through June 30, 2013. The *Dismissal Order* did

---

[4] Use of the term "res judicata" in this decision is referring to the doctrine of claim preclusion, even though the term "res judicata" is sometimes viewed as including collateral estoppel, which is the doctrine of issue preclusion.

not dismiss the claims against Sherman regarding professional

services he performed after June 30, 2013.

The court did not make the *Dismissal Order* of September 23,

2016, final and appealable under Fed. R. Civ. P. 54(b).  On

August 20, 2020, almost four years after entry of the *Dismissal

Order*, Trigee filed its *Motion for Reconsideration*, seeking to

set aside the *Dismissal Order*.  The *Motion for Reconsideration*

concerns certain steps Lerch Early and Sherman took in the

bankruptcy case regarding the unsecured claim of SGA Companies,

Inc. ("SGA").

II

THE MALPRACTICE DAMAGES CLAIMS RELATING<br>TO SERVICES RENDERED CONCERNING SGA'S CLAIM

Paragraph 27 of the *Complaint* alleges:

The defendants also failed to file a correct List of
Creditors.  For example, Defendants did not list as
"Disputed" the claim of the architect Sassan Gharai and
his architectural firm SGA ("SGA").  That failure and the
failure to assert the statute of limitations as to SGA,
coupled with Defendants failure to file a confirmable
Plan, allowed this disputed creditor to file another Plan
that would liquidate Trigee and turn over its stock to
SGA.  This mistake by Defendants was expensive and time-
consuming for Trigee.  SGA's claims were large, with
legal fees and interest.  Defendants' failure to assert
the statute of limitations and other defenses, and the
mishandling of this claim, kept Trigee from being able to
dismiss the bankruptcy until SGA's claim was resolved.
Trigee ultimately had to settle and pay SGA $100,000 and
dismiss its appeals.

There is no dispute that Sherman, while still employed at Lerch

Early, failed to schedule SGA's claim as disputed and that, after

5

he left Lerch Early on June 30, 2013, he failed to include the statute of limitations as a ground of objection in Trigee's objection to SGA's claim.  I will assume (without deciding) that each of these failures sufficed to require rejection of any statute of limitations defense to SGA's claim, and constituted an act of negligence because the statute of limitations defense would have succeeded but for such negligence.

The failure to list SGA's claim as disputed occurred in 2012, before Lerch Early filed its *Final Application* on January 10, 2014.  By the time Lerch Early filed its *Final Application*, Trigee was already aware that SGA's claim had not been scheduled as disputed, and Trigee was aware, or ought to have been aware, of its injury arising therefrom.  Two of Trigee's officers had been at the hearing of November 13, 2013, at which SGA's counsel raised the argument that the statute of limitations was inapplicable because Trigee scheduled SGA's claim without an indication that it was disputed.

On November 26, 2013, the court entered an Order Overruling Objection to Claim of SGA Companies, Inc. pursuant to the court's oral decision at the November 13, 2013 hearing.  As the holder of this allowed claim, SGA filed a motion on December 12, 2013, advising that it would proceed to file a competing reorganization plan in light of Trigee's failure to timely file a confirmable reorganization plan that would permissibly address SGA's claim.

6

For the reasons explored below, the consequence on this current record is that the res judicata effect of the *Final Fee Order* extends to any malpractice damages claims against Lerch Early relating to the failure to list SGA's claim as disputed.

Trigee additionally notes that its schedules were not signed by Johnnie Mae Durant, the owner and president of Trigee, despite a representation on the schedules that she had signed them under penalty of perjury.  However, even assuming without deciding that the failure to obtain Ms. Durant's signature was a factor leading to the scheduling of the SGA claim as undisputed, it was the listing of SGA's claim on Trigee's schedules as not disputed that proximately damaged Trigee, and not the failure to obtain Ms. Durant's signature.[5]

III

FACTS

The following facts pertinent to the *Motion for Reconsideration* are not in genuine dispute.  They include facts that the court previously found incident to entering the *Dismissal Order* of September 23, 2016.  Other recited facts are based on filings in the bankruptcy case or adversary proceeding,

---

[5]  Trigee has not sought to amend its *Complaint* to assert that the failure to obtain Ms. Durant's actual signature caused it damage, nor has Trigee sought relief from the *Final Fee Order* in the main case based on the failure to obtain her signature.

7

including a transcript of the hearing of November 13, 2013, in the bankruptcy case.

Trigee owned and operated a 96-unit residential rental property in Washington, D.C. (the "Property") located in the 3500 block of Minnesota Avenue, SE.  On September 12, 2012, Trigee formally retained Lerch Early and Sherman to represent Trigee in a case under Chapter 11 of the Bankruptcy Code (11 U.S.C.).  On September 13, 2012, Sherman and Lerch Early filed a voluntary Chapter 11 petition in this court on Trigee's behalf, commencing the main case and thereby staying an imminent foreclosure sale of the Property.

A.

LISTING, ON TRIGEE'S FILINGS,
OF SGA'S CLAIM AS NOT DISPUTED; SHERMAN'S
FAILURE TO OBTAIN "WET SIGNATURES" ON SUCH FILINGS

On September 14, 2012, Sherman filed Trigee's list of the creditors holding the 20 largest unsecured claims pursuant to Fed. R. Bankr. P. 1007(d).  SGA was listed as a creditor but the list failed to indicate that SGA's claim was disputed.

On October 11, 2012, SGA timely filed its proof of claim,[6] attaching invoices dated from October 1, 2006, to February 1, 2007, issued to Faisal Khan, Rehana Khan Enterprises, LLC, for $90,968.75, plus finance charges, for architectural work relating to the Property.

---

[6]  Claim No. 1-1 on the *Claims Register* in the main case.

On October 12, 2012, Sherman filed Trigee's *Schedules*, which
listed SGA's claim on *Schedule F - Creditors Holding Unsecured
Nonpriority Claims* in the amount of $80,000 without indicating
that the claim was disputed.  SGA's claim was the third largest
claim on *Schedule F*.  On November 29, 2012, Sherman filed
Trigee's *Amended Schedule F*, which once again listed SGA's claim
as being in the amount of $80,000 without indicating that the
claim was disputed.  Sherman electronically filed the
Rule 1007(d) list, the initial schedules, and the *Amended
Schedule F*, and represented via "/s/ Johnnie Mae Durant" that
Johnnie Mae Durant had signed each of those documents under
penalty of perjury.  Trigee's *Motion for Reconsideration* asserts
that depositions taken in March through May 2018, after entry of
the *Dismissal Order* of September 23, 2016, revealed that Sherman
and Lerch Early had not obtained Johnnie Mae Durant's actual
("wet") signature on any of those documents.[7]

The defendants' *Opposition* to the *Motion for Reconsideration*
includes an email chain of August 26, 2013, in which Oswald
("Ozzy") Durant, an officer of Trigee, emailed Sherman, stating
(among other things):

> SGA architects is listed on both of the two creditors
> lists that I found in Pacer as not being Disputed.  I

---

[7]  The evidence presented does not demonstrate that Sherman
or anyone else at Lerch Early knowingly filed any of the
documents without Lerch Early having obtained a "wet signature"
beforehand.

know I listed them as Disputed from day one.  This is
not a mistake I would have made.

Sherman e-mailed a reply the same day stating:

I'd like to file the First Omnibus objection to Proofs of
Claim that I shared with you last week.  . . . [B]ecause
SGA filed a Proof of Claim, it now makes no difference
whether or not it was listed as disputed, although I do
not know why it might not have been.[8]

Trigee has not disputed the genuineness of the email chain in its
*Reply* to the *Opposition* to its *Motion for Reconsideration*.

B.

THE OBJECTION TO SGA'S CLAIM

On August 30, 2013, Sherman filed Trigee's *Omnibus Objection
to Claims*, including an objection to SGA's claim on this basis:
"Claim not liability of the Debtor; claim arises under contract
with third party."  The objection did not include as a basis that
SGA's claim was barred by the applicable three-year statute of
limitations, even though the architectural services at issue had

---

[8]   Upon SGA's timely filing its proof of claim, the claim
became an allowed claim pursuant to 11 U.S.C. § 502(a) unless a
party in interest were to later file an objection to the claim.
Fed. R. Bankr. P. 3003(b)(1) provides that unless a scheduled
claim is "scheduled as disputed, contingent, or unliquidated" the
claim is an allowed claim, but under Rule 3003(c)(4) a timely
filed proof of claim supersedes any scheduling of the claim.
Accordingly, if Trigee's schedules had scheduled SGA's debt as
disputed, SGA's claim would still be an allowed claim pursuant to
SGA's earlier-filed proof of claim.  In that regard, it did not
matter that Sherman had failed to schedule the claim as disputed.
However, as will be seen, the failure to list the debt as
disputed on Trigee's Rule 3007(d) list and on its *Schedule F* did
matter in regard to the statute of limitations.

been completed by February 1, 2007, and Trigee commenced its
bankruptcy case over five years later on September 13, 2012.[9]

On September 26, 2013, SGA filed an opposition (Case No. 12-
00624, Dkt. No. 305), asserting that the services rendered by SGA
were for the benefit of and used by Trigee.  On November 12,
2013, SGA filed an extensive memorandum setting forth its
arguments as to why Trigee was obligated to pay for SGA's
services even though the proposed contract had listed Rehana
Enterprises, LLC as the owner of the Property.  On November 13,
2013, the court held a hearing on the objection to SGA's claim.
A transcript of that hearing, which included the court's oral
decision overruling the objection to the claim, is Dkt. No. 407
in the bankruptcy case (filed on February 26, 2014).  Johnnie Mae
Durant was seated at Trigee's counsel table during the hearing,
Tr. at 38, and Oswald Durant testified as a witness.  During his
testimony, Oswald Durant testified that "I gave to our lawyer's
paralegal, the schedules that she asked me for, and they redid it
in their own way."  Tr. at 22.  When SGA's attorney, Bradshaw
Rost, then advised him, Tr. at 22, that the schedules had listed
SGA as being owed $80,000, he testified that his position "was
that this was a disputed claim" and that "SGA was always

---

[9]  Once Trigee belatedly raised the statute of limitations
defense, SGA contended that the statute of limitations was
suspended by promises to pay, but the court never had occasion to
rule on that contention.  For purposes of analysis, I will assume
without deciding that the statute of limitations was not tolled.

disputed." Tr. at 23.  In questioning Oswald Durant, Rost also

brought to his attention that the schedules reflected "that the

Debtor affirmed under oath . . . that it was indebted to SGA for

the sum of $80,000."[10]  At the beginning of his closing argument

on behalf of SGA, Rost argued:

> [Trigee] filed the schedules affirming under penalties of
> perjury, that the Debtor was indebted to SGA for $80,000
> for the services rendered.  There's been no amendment to
> those schedules.  There's been no modification made for
> it.   There's been  no  explanation  as  to  why  that
> statement, at the time it was made, was incorrect and not
> reliable.

Tr. at 66.  Rost's argument, at that juncture of the hearing, was

not addressed to the statute of limitations defense, which

Sherman had not yet raised as a defense to SGA's claim.  Instead,

Rost advanced the argument in an attempt to show the dubious

validity of Trigee's contention that it had not incurred the

debt.  However, Rost's argument brought home the point that

Sherman had filed schedules listing the claim as not disputed

despite Oswald Durant's position that SGA's claim was a disputed

claim.

In turn, in his closing argument, Sherman, as Trigee's

counsel, argued (among other things) that the claim was barred by

the statute of limitations.  Tr. at 74.  Rost then responded by

noting that this affirmative defense should be overruled because

---

[10]   The schedules purport to have been signed under penalty
of perjury by Johnnie Mae Durant, but the important point is that
they purport to have been signed by Trigee through an officer or
employee, and thus to have been an affirmation of Trigee.

it had not been raised previously, Tr. at 81-82, and that SGA
would have made arguments against the defense had it been raised
as such previously, including:

> I believe by reaffirming the debt in their schedules,
> that they have acknowledged it to be valid as of that
> date, and they had revived the claim, for purposes of
> the statute of limitations, to affirm under oath that
> it's owed, takes it out of the statute of limitations.

Tr. at 83.  The court orally overruled the objection to SGA's
claim, stating in relevant part:

> The Debtor belatedly raised a statute of limitations
> defense to the Proof of Claim, but the objection to claim
> did not raise that defense.  This was an evidentiary
> hearing and there was no appropriate notice that the
> statute of limitations would be a defense, and
> accordingly, I reject the statute of limitations defense.

Tr. at 100.  The court did not rule on Rost's argument that the
scheduling of SGA's claim as not disputed nullified the statute
of limitations.

On November 26, 2013, the court entered its order overruling
the objection to SGA's claim and allowing the claim as a final
and appealable order pursuant to Fed. R. Civ. P. 54(b).  Trigee
did not appeal the order or seek reconsideration of the order
within 14 days under Fed. R. Bankr. P. 9023.

C.

DAMAGE TO TRIGEE
ARISING FROM THE ORDER ALLOWING SGA'S CLAIM

The order of November 26, 2013, was analogous to the entry
of a monetary judgment in a civil action in a district court.[11]
The imposition of this liability injured Trigee, for it fixed
SGA's right to enforce its claim in the bankruptcy case.  This
resulted in immediate adverse consequences for Trigee.

First, at the same hearing of November 13, 2013, after
ruling on the objection to SGA's claim, the court addressed
Trigee's proposed disclosure statement regarding its amended
plan.  SGA had objected to Trigee's proposed plan as violating
the absolute priority rule.  The court would have dismissed SGA's
objection to the disclosure statement if SGA's claim had been
disallowed.  Instead, as the claim had been upheld, and in light
of SGA's objection to the plan, the court concluded that Trigee
was required to file a further amended plan and a disclosure
statement relating thereto.  At the hearing, the court gave
Trigee until November 26, 2013, to file those documents.

Second, with an adjudicated monetary claim, SGA had rights
to pursue collection of its claim within the bankruptcy case,
including the right to file and pursue its own proposed plan and

---

[11]  A proof of claim is analogous to a complaint filed in
the District Court.  *See Kline v. Zueblin (In re American Export
Grp. Int'l Servs.)*, 167 B.R. 311, 313 (Bankr. D.D.C. 1994).

14

to object to any further plan Trigee proposed that was contrary
to the requirements of the Bankruptcy Code.  Counsel for SGA
stated on the record at the hearing that SGA might file a
competing reorganization plan depending on the terms of Trigee's
forthcoming further amended plan.  The court indicated at the
hearing that SGA could file a competing plan by December 16,
2013, and also set a hearing for December 18, 2013, on any
amended disclosure statement regarding any further amended plan
Trigee filed by November 26, 2013, and on any competing plan SGA
filed.  If SGA's claim had been disallowed as barred by the
statute of limitations, it would not have had a right to receive
any dividend under any plan filed by Trigee that might be
confirmed or to file a competing plan.

Finally, if Sherman had preserved the statute of limitations
defense, Sherman likely would have been able to avoid putting
Oswald Durant to the burden of testifying at the hearing of
November 13, 2013, regarding the merits of SGA's claim.  That in
itself was an injury to Trigee, as its *Complaint* lists as some of
its damages "the fees and expenses incurred because of otherwise
unnecessary litigation and work;. . . [and] the cost of the time
and resources for Plaintiff and its employees[.]"  *Compl.* ¶ 42.
Moreover, with SGA's claim having been allowed, Trigee and its
employees would have to devote time and resources to determining
how to address SGA's now-allowed claim.

15

D.

TRIGEE'S AWARENESS, BEFORE LERCH EARLY FILED ITS *FINAL APPLICATION*, OF THE NEGLIGENT ACTS AND THE RESULTING INJURY

The filing of the *Schedule F* listing SGA's claim without indicating that it was disputed occurred in October 2012.  Oswald Durant was aware of that failure as of August 26, 2013.  Moreover, two of Trigee's officers, Johnnie Mae Durant and Oswald Durant, were present at the hearing of November 13, 2013.  To review the key facts, at that hearing:

- Oswald Durant was questioned as a witness regarding SGA's claim being scheduled as owed $80,000, and he testified that he had indicated to Lerch Early that the SGA claim was disputed.

- Rost (SGA's counsel) specifically raised the argument that the failure to schedule the claim as disputed resulted in the statute of limitations not being a valid defense.

- After orally overruling the objection to SGA's claim, the court proceeded to treat SGA's allowed claim as (1) requiring Trigee to file a new plan and disclosure statement to address SGA's objection to the amount SGA would recover under Trigee's proposed Chapter 11 plan, and (2) allowing SGA to file a competing proposed plan that would increase SGA's recovery.

16

Moreover, as discussed below, by December 2013, other events had alerted Trigee that SGA was proceeding to exercise further rights in the bankruptcy case as the holder of an allowed claim.

Trigee failed to file a further amended plan. As a consequence, on December 12, 2013, SGA moved to extend the deadline for filing a competing reorganization plan, and to cancel the hearing of December 18, 2013. SGA's motion stated its decision to file a competing plan. Sherman promptly advised Trigee of SGA's intention to file a plan after SGA filed its motion. The court granted SGA's motion via an order of December 17, 2013, giving Trigee and other parties until January 17, 2014, to file proposed plans and disclosure statements. The clerk's office mailed Trigee a copy of that order on December 19, 2013.[12] Moreover, in November 2013, Sherman had notified one or more of Trigee's principals that SGA had stated that it might file a competing reorganization plan. Accordingly, prior to the filing of Lerch Early's *Final Application* on January 10, 2014, Trigee had learned that SGA's claim had not been listed as disputed, and the claim had been allowed, resulting in damages to Trigee that were or ought to have been apparent to its principals by that date.

---

[12] The court's docket in the main case reflects that on December 19, 2013, the Clerk, through the Bankruptcy Noticing Center, mailed Trigee a copy of the order granting SGA's motion to extend the deadline for filing a competing plan of reorganization.

17

E.

THE *FINAL APPLICATION*
REGARDING LEGAL SERVICES PROVIDED BY
SHERMAN AND LERCH EARLY PRIOR TO JULY 1, 2013

As noted previously, on January 10, 2014, Lerch Early, which

had ceased representing Trigee by June 30, 2013, filed its *Final*

*Application* in the bankruptcy case, along with a notice of

opportunity to object.  On that same day, Lerch Early sent Trigee

a copy of the *Final Application* and the notice of the opportunity

to object.  Trigee did not object to the *Final Application*, and

on February 4, 2014, the court entered its *Final Fee Order*.

F.

TRIGEE'S MOTION TO RECONSIDER
THE ORDER ALLOWING SGA'S CLAIM

In relevant part, 11 U.S.C. § 502(j) provides: "A claim that

has been allowed or disallowed may be reconsidered for cause.

A reconsidered claim may be allowed or disallowed according to

the equities of the case."  With respect to the order allowing

SGA's claim, Trigee was entitled to seek reconsideration under

Fed. R. Bankr. P. 3008 and 9024 (making Fed. R. Civ. P. 60

applicable) if it had grounds for doing so.  On April 14, 2014,

four months after the November 26, 2013 order allowing SGA's

claim, Sherman filed in the bankruptcy case Trigee's *Motion to*

*Reconsider Allowance of Claim – SGA Companies, LLC*, which

included a defense that SGA's claim was barred by the statute of

limitations, as well as other defenses not included in Trigee's

18

original objection to SGA's claim.  On May 5, 2014, SGA filed an

opposition which, as to the statute of limitations defense,

relied on *Jenkins v. Karlton*, 620 A.2d 894, 904-05 (Md. 1993)

("The statute of limitations does not extinguish the debt; it

bars the remedy only.  Thus, Maryland law has long recognized

that acknowledgment of a debt barred by limitations removes the

bar to pursuing the remedy.").[13]

On May 15, 2014, the court held a hearing on the *Motion to

Reconsider Allowance of Claim*.  As held in *Colley v. National

Bank of Texas (In re Colley)*, 814 F.2d 1008, 1010 (5th Cir.

1987), "when a proof of claim has in fact been litigated between

parties to a bankruptcy proceeding, the litigants must seek

reconsideration of the court's determination pursuant to the

usual Rule 60 standards if they elect not to pursue a timely

appeal of the original order allowing or disallowing the claim."

Trigee had no valid basis for reconsideration under Rule 60.

Trigee was advancing multiple defenses for the first time in its

*Motion to Reconsider Allowance of Claim*, having failed to do so

in its original objection to SGA's claim.  This failure could not

be considered excusable neglect qualifying for Rule 60(b)(1)

relief, even if the court applied Rule 60 less rigidly than some

---

[13]   SGA expanded on that argument in a supplemental
opposition filed on May 13, 2014.

cases suggest,[14] and no other part of Rule 60 could have
authorized relief from the order.[15]  On that basis, the court
rejected some of the new defenses Trigee had raised in its *Motion
to Reconsider Allowance of Claim*.

The oral ruling that there had not been excusable neglect
logically applied as well to the statute of limitations defense
Trigee raised in the *Motion to Reconsider Allowance of Claim*,
although the ruling did not expressly reject the statute of
limitations defense on that basis.  The court ruled that the
defense was without merit for another reason: the acknowledgment
of the debt as not disputed on the schedules removed the statute
of limitations as a defense to SGA's claim, thus requiring
rejection of the statute of limitations defense.  On June 2,
2014, the court entered an order in the bankruptcy case denying

---

[14]  *See In re Yelverton*, Case No. 09-00414, 2010 WL 1487850,
*1-2 (Bankr. D.D.C. Apr. 9, 2010) (quoting *In re Willoughby*, 324
B.R. 66, 73-74 (Bankr. S.D. Ind. 2005)).  For reasons explained
in *In re Bennett*, 590 B.R. 156, 161 (Bankr. E.D. Mich. 2018), "a
showing of cause for purposes of reconsideration under § 502(j)
and Bankruptcy Rule 3008 minimally requires a demonstration of
grounds for relief from the order under Rule 59 or Rule 60."
With respect to what constitutes "excusable neglect" under
Rule 60(b)(1), the court in its discretion may take into account
that § 502(j) contemplates allowance or disallowance of a claim
upon reconsideration "according to the equities of the case," and
that is essentially what occurred in *In re Yelverton*.  The
equities here weighed against considering Trigee's failure to
have timely raised its new defenses to have been excusable
neglect.

[15]  Moreover, there was an issue of whether Rule 60(b)(1)
relief had been sought within a reasonable time as required by
Rule 60(c).

the *Motion to Reconsider Allowance of Claim* pursuant to the court's oral ruling of May 15, 2014.[16]

Trigee took an appeal from that order, but Trigee and SGA reached a settlement calling for payment to SGA of $100,000, dismissal of the bankruptcy case, and dismissal of the appeal. On September 10, 2014, the court entered an order approving the settlement and dismissing the bankruptcy case.  On September 12, 2014, the District Court entered an order dismissing the appeal (Case No. 1:14-cv-01192-KBJ).

G.

THE DISMISSAL OF THE CLAIMS RELATING
TO SERVICES RENDERED THROUGH JUNE 30, 2013,
BASED ON THE RES JUDICATA EFFECT OF THE *FINAL FEE ORDER*
AND THE UNSUCCESSFUL EFFORTS TO VACATE THE *FINAL FEE ORDER*

On May 27, 2016, Lerch Early and Sherman filed their *Motion to Dismiss*.  They argued that Trigee's malpractice damages claims for services that the Lerch Early attorneys performed through June 30, 2013, was barred by res judicata because "Trigee was aware of that potential claim when the Second Application and the Final Application were filed, but it failed to raise any issue concerning the quality of the pertinent work." *Mot. to Dismiss* 13.  Trigee's opposition to the *Motion to Dismiss* did not argue

---

[16]   The order included the qualification that the denial was "without prejudice to any objection to the claim as including a claim for unmatured interest as of the petition date," but that qualification has no impact on the issues this decision addresses.

that when Lerch Early filed its *Final Application*, Trigee was
unaware of its potential malpractice damages claim arising from
the failure of Lerch Early attorneys to schedule SGA's claim as
disputed.

On September 23, 2016, the court concluded in its *Memorandum
Decision* that res judicata barred all of the malpractice damages
claims arising from services rendered prior to June 30, 2013, and
entered the *Dismissal Order*.  The failure to schedule SGA's claim
as disputed occurred during that period.  While the *Memorandum
Decision* did not expressly discuss this failure, it cited
Trigee's allegation regarding that failure as among "Trigee's
allegations . . . that Sherman and Lerch Early should be held
liable for having allowed SGA to file a competing reorganization
plan," *Mem. Dec.* 22 (citing Compl. ¶¶ 27, 40-43), and concluded
that "[h]aving known by [the granting of the *Final Application* on
February 4, 2014] of the factual basis for raising a claim of
malpractice regarding SGA being allowed to file a competing plan,
res judicata bars Trigee's assertion of such a claim," *id.* at 23.
As noted already, Trigee did not argue that when Lerch Early
filed (or when the court granted) the *Final Application*, Trigee
was unaware of that potential malpractice damages claim.  Even in
its *Motion for Reconsideration*, Trigee does not argue that it did
not learn, pursuant to the hearing of November 13, 2013, that SGA
took the position that Trigee had no statute of limitations

22

defense because of the failure to schedule SGA's claim as
disputed.

As to Trigee's allegation that Sherman failed to raise a
statute of limitations defense and other defenses in the
objection to SGA's claim, the *Memorandum Decision* stated that
"Trigee's objection to SGA's claim was filed on August 30, 2013,
and is therefore beyond the scope of the instant motion, which is
limited to services rendered through [June 30, 2013]."  *Id.* at
13.

As discussed below, the only reasonable inference on the
current record is that when Lerch Early filed its *Final
Application*, Trigee *was* aware (or was on inquiry notice) that it
had a potential malpractice damages claim: Trigee knew that SGA's
claim had not been scheduled as disputed, and it knew or ought to
have known that it was thereby injured.  For reasons explored
below, the consequence is that the res judicata effect of the
*Final Fee Order* of February 4, 2014, extends to any malpractice
damages claim relating to the failure to list SGA's claim as
disputed.

Two efforts to set aside the *Final Fee Order* failed.  First,
on August 8, 2016, during the pendency of the defendants' *Motion
to Dismiss*, Trigee filed in the bankruptcy case a *Motion to
Vacate Order Granting Final Application for Approval of
Compensation for Lerch, Early & Brewer for the Period May 2013*

23

*Through June 2013*.   Trigee recognized that the *Final Fee Order*
would not be accorded res judicata effect if it were vacated.
At a hearing of October 20, 2016, the court orally ruled that
Trigee's *Motion to Vacate* must be denied, and on October 25,
2016, the court entered an order denying it.

Second, on December 7, 2016, Nancy Durant filed her own
motion to vacate the *Final Fee Order*.   For reasons stated at a
hearing of January 26, 2017 (later supplemented by a memorandum
decision of February 10, 2017), the court entered an order on
February 1, 2017, denying Nancy Durant's motion.   An appeal
ensued (Case No. 1:17-cv-00439-CRC in the District Court).   On
August 3, 2019, the District Court entered a *Memorandum Opinion*
and an order affirming this court's order denying Nancy Durant's
motion to vacate the *Final Fee Order*.

H.

THE DEPOSITIONS IN THIS ADVERSARY PROCEEDING AND
TRIGEE'S *MOTION FOR RECONSIDERATION* OF THE *DISMISSAL ORDER*

Meanwhile, after the September 23, 2016 entry of the
*Dismissal Order* disposing of the claims relating to services
rendered through June 30, 2013, this adversary proceeding moved
forward with respect to the other claims against Sherman, as to
services he rendered after June 30, 2013.   After various
amendments to the scheduling order, the court directed that
discovery was to conclude by July 2018.   From March through
May 2018, Trigee took depositions of Jeffrey Sherman, John

24

Tsikerdanos (a former Lerch Early associate who assisted Sherman there), and Erin Moyer (a former paralegal at Lerch Early).

Trigee asserts that those depositions demonstrate that Lerch Early and Sherman "had filed the Schedules listing SGA's claim as undisputed without Plaintiff's prior approval and without securing a Trigee's [representative's] signature to any of the filings bearing a signature for the Plaintiff's representatives." *Mot. for Recons.* 8.  On that basis, Trigee filed the instant *Motion for Reconsideration* on August 20, 2020, asking the court to vacate the *Dismissal Order*.

IV

RECONSIDERATION UNDER RULE 54(b)

Motions to reconsider interlocutory orders may be granted before the entry of a final judgment, pursuant to Federal Rule of Civil Procedure 54(b), "as justice requires."  *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015) (quoting *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir. 1985) (Breyer, J.)).  As noted in *Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 772 F. Supp. 2d 218, 223 (D.D.C. 2011):

> "As justice requires" indicates concrete considerations of whether the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court." *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (internal citation omitted).  These considerations leave a great deal of room for the court's discretion

25

and, accordingly, the "as justice requires" standard amounts to determining "whether [relief upon] reconsideration is necessary under the relevant circumstances." *Id.*

"Ultimately, the moving party has the burden to demonstrate 'that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied.'" *United States v. All Assets Held at Bank Julius, Baer & Co., Ltd.*, 315 F. Supp. 3d 90, 97 (D.D.C. 2018) (quoting *FBME Bank Ltd. v. Mnuchin*, 249 F. Supp. 3d 215, 222 (D.D.C. 2017)).

Therefore I will proceed to focus on whether an injustice, as laid out above in *Estate of Botvin*, would arise if I deny the *Motion for Reconsideration*. On the evidence of record, no injustice would arise from denying Trigee's *Motion for Reconsideration*. As discussed below, Trigee's claims relating to the listing of SGA's claim on *Schedule F* as not disputed would still be barred by res judicata on the basis that, before Lerch Early filed its *Final Application*, Trigee was aware of the failure of its *Schedule F* to show SGA's claim as disputed, was aware of SGA's contention that this failure nullified Trigee's statute of limitations defense, and was aware of the other circumstances causing its malpractice damages claim to have accrued. Trigee alleges no misunderstanding or error of apprehension by the court that would change this result, and I reject Trigee's contention that there has been a dispositive change to either the law or to the facts in the case.

26

A.

TRIGEE'S OBLIGATION TO RAISE ITS
MALPRACTICE DAMAGES CLAIMS AS PART OF THE FEE
LITIGATION IF IT HAD PROCEDURES AVAILABLE TO DO SO

In *Capitol Hill Group*, the Court of Appeals reasoned that a counterclaim may be barred by res judicata "when 'the relationship between the counterclaim and the plaintiff's claim is such that the successful prosecution of the second action would nullify the initial judgment or impair the rights established in the initial action.'"  569 F.3d at 492, citing *Iannochino v. Rodolakis (In re Iannochino)*, 242 F.3d 36, 42 (1st Cir. 2001), which in turn was quoting Restatement (Second) of Judgments § 22(2)(b).[17]  By reason of that principle, the Court of Appeals concluded:

---

[17]   Restatement (Second) of Judgments § 22(2) (Am. Law Inst. 1982) provides:

A defendant who **may** interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:

> (a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or
>
> (b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

(emphasis added).

> To allow CHG to litigate malpractice claims against Shaw
> Pittman now, based on the same representation, would
> nullify the initial judgment or impair the rights
> established by Shaw Pittman in the bankruptcy fee
> litigation. Unlike in regular civil litigation, "[i]n
> bankruptcy . . . a successful malpractice action could
> impair rights that [the bankruptcy professionals] had
> gained from the order awarding them fees. Under the
> relevant section of the bankruptcy code governing fee
> awards, a finding of malpractice would mean that the
> attorneys were not entitled to compensation for those
> services found to be substandard." *Iannochino*, 242 F.3d
> at 42-43 (internal citation omitted); *see* [*Southmark
> Corp. v. Coopers & Lybrand (In re Southmark Corp.*), 163
> F.3d 925, 931 (5th Cir. 1999)] ("Award of the
> professionals' fees and enforcement of the appropriate
> standards of conduct are inseparably related functions of
> bankruptcy courts.").

*Id.* at 492-93.

Nevertheless, res judicata does not apply where the claim sought to be barred could not have been litigated in the prior proceeding. *Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.)*, 200 F.3d 382, 389 (5th Cir. 2000). Accordingly, in determining whether res judicata applies, one issue is "whether the bankruptcy court possessed procedural mechanisms that would have allowed [the debtor] to assert [its malpractice damages claims]" as a defense against the *Final Application*. *Ries v. Paige (In re Paige)*, 610 F.3d 865, 873-74 (5th Cir. 2010), quoting *Intelogic Trace*, 200 F.3d at 388.

As will be seen, Trigee's legal malpractice damages claims regarding services rendered by Lerch Early through June 30, 2013, accrued prior to the *Final Application*. Accordingly, if the applicable rules afforded a procedural mechanism under which

28

Trigee could have litigated its malpractice damages claims as a
defense to the *Final Application*, *see Paige*, 610 F.3d at 873-74,
the binding precedent of *Capitol Hill Group* required Trigee to
raise those claims against the *Final Application* in order for the
claims not to be barred by res judicata.

In *Capitol Hill Group*, 569 F.3d at 492, the Court of Appeals
noted this court's observation that the debtor there could have
pursued its malpractice claims at the bankruptcy fee hearings,[18]
and necessarily concluded that the debtor there had procedures
available under the applicable rules to raise its malpractice
damages claims as a defense to its former counsel's fee
application in the litigation of that application.  As discussed
below, procedures existed here as well for Trigee to have raised
its malpractice damages claims as a defense to Lerch Early's
*Final Application*.

---

[18]     Specifically, the Court of Appeals noted approvingly
this court's observation that Capitol Hill Group "could have
pursued claims against Shaw Pittman regarding the adequacy of its
representation . . . at the bankruptcy fee hearings but that it
failed to do so and would therefore be barred from later
asserting claims based on Shaw Pittman's representation by the
doctrine of res judicata."  569 F.3d at 492 (quoting *Capitol Hill
Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 574 F. Supp. 2d
143, 147 (D.D.C. 2008) (quoting an observation this court made at
a hearing)).

29

B.

EVEN THOUGH AN ASSERTION OF
TRIGEE'S MALPRACTICE DAMAGES CLAIMS
WOULD HAVE REQUIRED AN ADVERSARY PROCEEDING UNDER
RULE 7001, PROCEDURES EXISTED FOR TRYING TOGETHER THE
"INSEPARABLY RELATED" MALPRACTICE CLAIMS AND FEE APPLICATION

The *Final Application* was brought under Fed. R. Bankr. P.
2016(a) via an application and not via an adversary proceeding
complaint.  Fed. R. Bankr. P. 7001(1) would have required that
any claim for an affirmative recovery of malpractice damages be
brought as an adversary proceeding complaint.  Relying on
*Davenport v. Djourabchi*, 316 F. Supp. 3d 58 (D.D.C. 2018)
("*Davenport II*"), modifying *Davenport v. Djourabchi*, 296 F. Supp.
3d 245, 255-56 (D.D.C. 2017) ("*Davenport I*"), Trigee argues that
the malpractice damages claims, which could be pursued only via
an adversary proceeding, could not have been litigated in the
*Final Application* proceeding, and thus res judicata cannot apply.
I reject that argument.

The Federal Rules of Bankruptcy Procedure were sufficiently
flexible to have permitted the court to try an adversary
proceeding complaint for malpractice damages with the *Final
Application* proceeding regarding the services that the defendants
had provided on or before June 30, 2013.  Trigee could have
raised Lerch Early's malpractice as a defense to the *Final
Application* in an objection filed in the main bankruptcy case to
the *Final Application* because "a finding of malpractice would

30

mean that the attorneys were not entitled to compensation for
those services found to be substandard," *Capitol Hill Group*, 569
F.3d at 492-93 (quoting *Iannochino*, 242 F.3d at 42-43 (internal
citation omitted)).  If it also had a malpractice damages claim,
it could have addressed both an objection to the *Final
Application* and its malpractice damages claim together, as
explained below.

The *Final Application* was an administrative matter not by
itself giving rise to a dispute between parties requiring
resolution by the court.  Nevertheless, the court itself had a
duty to review the *Final Application*.  *See In Re Busy Beaver
Bldg. Ctrs., Inc.*, 19 F.3d 833, 843 (3rd Cir. 1994) (holding that
the bankruptcy court has "an independent duty to review fee
applications even absent objections"); *McGuirl v. White*, 86 F.3d
1232, 1236 (D.C. Cir. 1996).  The *Final Fee Order* thus
constituted a judicial determination that the fees sought by the
*Final Application* were warranted under the standards of
11 U.S.C. § 330(a)(3).

If Trigee had filed an objection under this court's Local
Bankruptcy Rules to the *Final Application*, that objection would
have given rise to a contested matter.  *United States v. Laughlin
(In re Laughlin)*, 210 B.R. 659, 661 (B.A.P. 1st Cir. 1997);
Advisory Committee Note (1983) to Rule 9014 ("If a party in
interest opposes the amount of compensation sought by a

31

professional, there is a dispute which is a contested matter.").[19]  An objection filed in the main case to the *Final Application* could not have appropriately included an assertion of Trigee's malpractice damages claims because Rule 7001(1) requires that such a claim be pursued in an adversary proceeding.

Neither Rule 7001 nor Rule 9014 would have necessarily barred the pursuit in an adversary proceeding of an objection to the *Final Application*, even though an objection to a fee application is not one of the proceedings listed in Rule 7001 as an adversary proceeding.  This follows because the court would have discretion under Rule 9014(c) to bless the pursuit of the

---

[19]  Under 11 U.S.C. § 330(a)(1), professionals' fees can be awarded only after notice and a hearing.  In turn, Fed. R. Bankr. P. 2002(a)(6) deals with required notice of the hearing on a fee application.  However, 11 U.S.C. § 102(1) provides in relevant part:

"After notice and a hearing", or similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances[.]

Accordingly, a court can satisfy the notice requirement of § 330(a)(1) and of Rule 2002(a)(6) by giving parties in interest notice of the opportunity to object to a fee application.  That is the procedure followed in this court.  *See* LBRs 2002-1(b)(1), 2002(k), and 2016-1(b).  The required notice form instructs how to make service of any objection to the fee application.

two matters together.[20]   Rule 9014(c) makes most of the Rules in

the Rules' part VII (Adversary Proceedings) applicable to a

contested matter, and then provides:

> The court may at any stage in a particular matter direct
> that one or more of the other rules in Part VII shall
> apply.  The court shall give the parties notice of any
> order issued under this paragraph to afford them a
> reasonable opportunity to comply with the procedures
> prescribed by the order.

Accordingly, a court may direct that an objection to a fee

application may proceed by way of joinder in a complaint with a

claim for malpractice damages.[21]   The court may so direct even

after a complaint has been filed joining the two matters.

Accordingly, had Trigee filed an adversary proceeding complaint

that included not only its malpractice damages claims but also an

objection to the *Final Application*, the court would have had the

authority under Fed. R. Bankr. P. 9014(c) to authorize the filing

---

[20]   There is no rule, like Rule 3007(b), that expressly
authorizes an objection to a fee application to be joined in a
complaint asserting a claim that must be pursued by reason of
Rule 7001 as an adversary proceeding.  Rule 3007(b) authorizes an
objection to a claim to be included in a complaint asserting a
Rule 7001 claim, thus making it unnecessary to obtain a court
order for authority to do so.  A fee application is necessarily
asserting a claim, but Rule 3007 addresses objections to proofs
of claim, not objections to fee applications.  Even though Rule
3007(b) does not apply to an objection to a fee application,
there is no apparent reason why the court ought not have
discretion to permit an objection to a fee application to be
pursued in a complaint asserting a malpractice damages claim.

[21]   However, when there are multiple parties asserting
objections to a fee application, the court might decide that it
makes sense to have all of the objections pursued in the main
case, and direct that such an objection filed in an adversary
proceeding complaint be re-filed in the bankruptcy case.

of the objection within the adversary proceeding complaint for
malpractice damages, thereby permitting the two matters to
proceed together in the adversary proceeding.  *See In re Fagan*,
559 B.R. 718, 727 (Bankr. E.D. Cal. 2016) ("whether to permit a
[contested matter] to be consolidated with, or raised in, an
adversary proceeding is up to the discretion of the bankruptcy
court"); *Motichko v. Premium Asset Recovery Corp. (In re
Motichko)*, 395 B.R. 25, 33 (Bankr. N.D. Ohio 2008).[22]

Assume, instead, that Trigee had elected to file an
objection to the *Final Application* in the main case.
Simultaneously, or shortly thereafter, Trigee could have filed an
adversary proceeding complaint under Rule 7001 to assert its
malpractice damages claims against the defendants.  Trigee could
then have moved for consolidation of the *Final Application*
proceeding with its complaint to recover a monetary judgment on
its malpractice damages claims.  *See Weinberg v. Scott E. Kaplan,*

---

[22]  Even without invoking Rule 9014(c), a court may uphold
the pursuit of a contested matter in an adversary proceeding
complaint by holding that it is harmless error not to dismiss the
contested matter pursued in an adversary proceeding complaint, or
that dismissing the contested matter would be elevating form over
substance.  *See*, *e.g.*, *Sanger v. Ahn*, 406 F. Supp. 3d 800, 805
(N.D. Cal. 2018), *aff'd sub nom. Sanger v. Ahn* (*In re Ahn*)*,* 804
F. App'x 541 (9th Cir. 2020); *Kilbourne v. CitiMortgage, Inc.* (*In
re Kilbourne*), 507 B.R. 219, 223-24 (Bankr. S.D. Ohio 2014);
*Motichko*, 395 B.R. at 32.  While a bankruptcy court has
discretion to dismiss a contested matter pursued in an adversary
proceeding complaint, *see, e.g.*, *Barrientos v. Wells Fargo Bank,
N.A.*, 633 F.3d 1186, 1189, (9th Cir. 2011), that does not mean
that the court is obligated to dismiss a contested matter pursued
in an adversary proceeding complaint.

*LLC*, 699 F. App'x 118, 121 (3d Cir. 2017), as amended (Sept. 14, 2017) (concluding that res judicata applied due to the ability to consolidate a contested matter with an adversary proceeding).

The court has such power to consolidate because Rule 9014(c) makes Rule 7042 applicable in contested matters.  Rule 7042 makes Fed. R. Civ. P. 42 applicable, and Rule 42(a) provides in relevant part: "If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions."

Under Rule 42, a contested matter and an adversary proceeding may be consolidated if they involve a common question of law or fact.  This follows because the Federal Rules of Bankruptcy Procedure treat both adversary proceedings and contested matters as "actions" for purposes of Rule 42.  As a consequence, a contested matter (one type of action) and an adversary proceeding (another type of action) are two actions that may be consolidated if they involve a common question of law or fact.

In conclusion, Trigee could have tried, in the same proceeding, both an objection to the *Final Application* and its malpractice damages claims.  Either it could have invoked Rule 9014(c) to seek permission to pursue both matters in an adversary proceeding complaint, or it could have filed them separately and then moved for consolidation under Rule 42.

35

The court would have had discretion in other ways to
preserve Trigee's malpractice damages claim from becoming barred
by res judicata.  If Trigee had filed an adversary proceeding
complaint asserting its malpractice claims, but needed discovery
to flesh out its complaint, Trigee could have asked that the
litigation of its objection to the *Final Application* (whether the
objection was filed separately in the main case or as part of the
adversary proceeding complaint) be stayed pending the outcome of
its assertion of its malpractice damages claims.  Even if Trigee
was not prepared to have filed an adversary proceeding complaint,
Trigee could have asked that the litigation of the *Final
Application* be delayed (or the time for it to defend against the
*Final Application* be extended) to allow Trigee time to develop
the facts and its theories of malpractice more thoroughly in
order to file an adversary proceeding complaint.  *See Intelogic
Trace*, 200 F.3d at 390.[23]  Trigee could have also asked the court
to reserve its malpractice damages claims for later adjudication
such that res judicata would not apply.  *See Paige*, 610 F.3d at
875.  The key point is that Trigee ought to have raised its

---

[23]  *See also Weinberg*, 699 F. App'x at 122 ("The Plaintiffs
counter that they did not know the extent of their damages at
that time.  But this is no excuse for failing to oppose the
application or apprise the Bankruptcy Court of the claim.  Had
the Plaintiffs done so, the court could have stayed the contested
fee application or permitted discovery on the matter.  See Fed.
R. Bank[r]. P. 9014."); *Paige,* 610 F.3d at 875.

concerns as to Lerch Early's performance in some manner during
the court's consideration of the *Final Application*.

Under the reasoning of *Davenport II*, Trigee would have had
to have been able to assert its malpractice claims in the same
proceeding (the *Final Application* proceeding) for res judicata to
apply.  However, by way of consolidation pursuant to Fed. R.
Bankr. P. 7042, or pursuit, upon court authorization, of both
matters in an adversary proceeding complaint, the two matters,
"inseparably related" matters under *Capitol Hill Group*, could
have been tried together.  That would have amounted to trying the
two matters in the same proceeding.

While the District Court held that Davenport did not need to
avail himself of Rule 7042, and seek to consolidate the claims in
that case for trial in order to avoid res judicata, *Davenport II*,
316 F. Supp. 3d at 66, 67-68, the differences between the claims
in *Davenport II* and Trigee's claims, as well as the similarities
between Trigee's claims and those considered in *Capitol Hill
Group*, render it inappropriate to extend that holding in
*Davenport II* to Trigee's claims.  Because Trigee's claims are
fairly distinguished from those in *Davenport II*, such an
extension would impermissibly depart from *Capitol Hill Group*.

In *Davenport II*, the District Court relied on *Hurd v.
District of Columbia Government*, 864 F.3d 671, 679 (D.C. Cir.
2017), in concluding that "the first prong of the *res judicata*

37

inquiry does not look to whether a claim could have been brought in the previous *court*; it examines if the second claim could have been brought in the first *proceeding*."  316 F. Supp. 3d at 68. However, *Hurd* is plainly distinguishable from this case, which is controlled instead by *Capitol Hill Group*.

In *Hurd*, the Court of Appeals addressed whether res judicata applied to a prisoner's damages claims against the Government when he failed to raise them in a habeas corpus proceeding.  The Court of Appeals concluded that "because section 1983 claims cannot be joined in a habeas proceeding, the Superior Court's unreviewed bench ruling was not the result of a full and fair opportunity to litigate."  *Hurd*, 864 F.3d at 679.   The Court of Appeals necessarily determined that the "plaintiff was precluded from recovering damages in the [habeas corpus proceeding] by formal jurisdictional or statutory barriers, not by plaintiff's choice," 864 F.3d at 680 (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)), such that res judicata did not apply.

Supreme Court precedent regarding habeas corpus proceedings makes clear that this was a proper determination in *Hurd*.  Habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate release, even though such a claim may come within the literal terms of § 1983.  *See Preiser v. Rodriguez*, 411 U.S. 475, 488-490 (1973).  In turn, "damages are not available in federal

38

habeas corpus proceedings." *Preiser*, 411 U.S. at 493.  If a
§ 1983 judgment would necessarily imply the invalidity of a
prisoner's conviction or sentence, the § 1983 complaint must be
dismissed unless the plaintiff can demonstrate that the
conviction or sentence has already been invalidated (for example,
via a prior habeas corpus proceeding). *Heck v. Humphrey*, 512
U.S. 477, 487 (1994).  Accordingly, in *Hurd*, the prisoner could
not have recovered § 1983 damages in the habeas corpus
proceeding, and the dismissal of the prisoner's habeas corpus
proceeding could not have res judicata effect.

Here, in contrast to *Hurd*, no formal jurisdictional or
statutory barriers prevented Trigee from filing an adversary
proceeding complaint asserting its malpractice damages claim and
then obtaining a consolidation of that adversary proceeding with
the litigation of an objection to the *Final Application*.

In *Davenport II*, it would have been theoretically possible
to have consolidated Davenport's objection to the mortgagees'
claim and a later adversary proceeding asserting Davenport's
damages claims against the mortgagees for wrongful foreclosure
and other wrongful acts.[24]  No jurisdictional or statutory
barriers precluded that approach.

---

[24]  However, as a practical matter the court would have
likely rejected such an approach because it would have
unreasonably delayed confirmation of the debtor's Chapter 13
plan.

Moreover, under Fed. R. Bankr. P. 3007(b), a debtor "may include [its objection to a proof of claim] in an adversary proceeding."  Accordingly, Davenport could have filed an adversary proceeding for a recovery of damages and included in the adversary proceeding his objection to the proof of claim. Unlike *Hurd*, there were no jurisdictional or statutory barriers precluding trying the two matters, via that route, in the same proceeding.

The more critical issue in *Davenport II* was not whether Davenport *could* have asserted his monetary damages claims in the litigation of his objection to the mortgagees' proof of claim; plainly the two matters could have been tried together.  The more critical issue was whether the two matters *should have been* tried together.  *See Capitol Hill Group*, 569 F.3d at 490 (quoting *NRDC v. EPA*, 513 F.3d 257, 261 (D.C. Cir. 2008) ("[C]laim preclusion is also intended to prevent litigation of matters that *should have been* raised in an earlier suit.")).

The key reason that res judicata did not apply in *Davenport II* was because Davenport's later civil action for damages would not have nullified the determination of the amount owed on the mortgage (the issue addressed by the objection to the mortgagees' claim).  A mortgagor's recovery of a damages claim against her mortgagee for wrongful foreclosure does not nullify the mortgage. Indeed, if the mortgage was on favorable terms, the mortgagor

40

would not want to nullify the mortgage.  Accordingly, Restatement
(Second) of Judgments § 22(2)(b), as applied in *Capitol Hill
Group*, 569 F.3d at 492-93, would not have required res judicata
to apply to bar Davenport's assertion of his damage claims after
entry of the order fixing the allowed amount of the mortgage
claim.

Another decision, *Iannochino* (relied upon in *Capitol Hill
Group*, 569 F.3d at 494-93) put it this way: for res judicata to
apply, the causes of action must be identical, and under
Restatement (Second) of Judgments § 24 (1982) the court must
look, first, to "whether the facts are related in time, space,
origin or motivation," second, to "whether they form a convenient
trial unit," and, third, to "whether their treatment as a unit
conforms to the parties' expectations."  *See Iannochino*, 242 F.3d
at 46.  The parties in *Davenport II* would not have expected that
Davenport's damages claims and his objection to the mortgagee's
proof of claim would be treated as a unit.  In Chapter 13, a
plan's duration cannot exceed five years.  It is noteworthy that
Davenport's bankruptcy case began in 2015 and that Davenport's
civil action asserting his damages claims is still pending, more
than five years later.  For purposes of Davenport's obtaining a
confirmed plan, he needed to obtain a prompt determination of the

41

amount owed on the mortgage.[25]  From that viewpoint, Davenport's damages claims and his objection to the proof of claim did not "form a convenient trial unit."  Nor would the treatment of the two proceedings as a trial unit have conformed to "the parties' expectations" when adjudication of Davenport's damages claims was not necessary to determine whether Davenport's Chapter 13 plan could be confirmed.

Stated differently, under the doctrine of res judicata, "a claim should not be barred unless the factual underpinnings, theory of the case, and relief sought against the parties to the proceeding are so close to a claim actually litigated in the bankruptcy case that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum." *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 337–38 (3d Cir. 2000); *see also Weinberg*, 699 F. App'x at 121.  It was not unreasonable for Davenport to forego pursuing his damage claims at the same time as he objected to the mortgagees' proof of claim.  Those matters turned on different sets of facts.  In the bankruptcy case, the requested relief was a determination of the amount owed: "the bankruptcy court only was asked to determine the amount of money

---

[25]  For example, under the confirmed plan, postconfirmation interest of 6% per annum on the allowed secured claim was to run from the confirmation of the plan, with interest accruing before confirmation at 10.5%.  *See In re Davenport*, ___ B.R. ___, No. 15-00540, 2020 WL 6891912, at *1–2 (Bankr. D.D.C. Nov. 24, 2020). Delay in obtaining a confirmed plan would have prejudiced Davenport.

due on the note; no evaluation of the legitimacy of the
foreclosure or of defendants' actions took place." *Davenport II*,
316 F. Supp. 3d at 68 n.9.  In the civil action, the requested
relief was damages for wrongful foreclosure and other wrongful
acts, and Davenport was not seeking to disturb the ruling on the
proof of claim.  As the District Court observed, the objection to
the mortgagees' claim was a necessary step to Davenport's
obtaining confirmation of a Chapter 13 plan, by way of fixing the
amount of the mortgagees' claim for purposes of distributions
under the plan, and requiring Davenport simultaneously "to
initiate an adversary proceeding [asserting his damages claims]
to resolve other issues . . . would have complicated matters and
created an unnecessary delay in proceedings, neither of which are
goals of the doctrine of *res judicata*."  316 F. Supp. 3d at 69-
70.

The District Court correctly concluded in *Davenport II* that
res judicata did not apply, but *Davenport II* is plainly
distinguishable from *Capitol Hill Group* and this case: the logic
in *Davenport II* is plainly not applicable to this case in which
the *Final Application* and Trigee's malpractice damages claims

43

involve such "inseparably related functions" of a bankruptcy
court that they ought to have been tried together.[26]  *See
Davenport II*, 316 F. Supp. 3d at 68 n.9 (distinguishing *Capitol
Hill Group* and similar cases finding that "in awarding fees to
attorneys in the bankruptcy court, the bankruptcy judge had
implicitly found that the attorney's services were acceptable so
any litigation of attorneys work should have been brought in the
bankruptcy case").  Here, in contrast to *Hurd* and to *Davenport
II*, the *Final Application* and the malpractice damages claim ought
to have been determined together as (1) they arose from the same
nucleus of operative facts, (2) the enforcement of standards of
conduct incident to a malpractice claim and an award of fees were
inseparably related functions of the Bankruptcy Court, and (3) a
later finding of malpractice would have nullified the earlier fee
award.  These differences weigh in favor of finding that res
judicata properly applies here, even though the malpractice

---

[26]  *Capitol Hill Group*, as here, involved a case under
Chapter 11 of the Bankruptcy Code.  *Capitol Hill Grp.*, 574 F.
Supp. 2d at 145.  As such, the Bankruptcy Court had to approve
counsel's employment in that bankruptcy case.  See 11 U.S.C.
§ 327; *Capitol Hill Grp.*, 569 F.3d at 487.  "[M]alpractice claims
against court-appointed professionals stemming from services
provided in the bankruptcy proceeding are 'inseparable from the
bankruptcy context.'"  *Id.* at 489 (quoting *Southmark Corp.*, 163
F.3d at 931).  The matters at issue in Capitol Hill Group were
very similar to those here: fee applications by a debtor in
possession's counsel and malpractice claims by that counsel's
former client concerning much of the same services as the fee
applications.  *Capitol Hill Grp.*, 569 F.3d at 488.  The outcome
of subsequent litigation of those malpractice claims could have
effectively nullified the earlier fee award.  *Id.* at 492.

damages claim could not have been asserted in any objection to the *Final Application* that Trigee might have filed in the main case. *See Capitol Hill Grp.*, 569 F.3d at 491, 492-93; *see also Weinberg*, 699 F. App'x at 121 (placing emphasis on the ability to consolidate a contested matter with an adversary proceeding).[27] For res judicata to apply, it was not necessary, under *Capitol Hill Group*, that the malpractice monetary damages claims be capable of assertion in the same filing as an objection to the *Final Application*.  In response to the claims asserted in the *Final Application*, Trigee ought to have initiated an adversary proceeding asserting its malpractice claims—or at least, Trigee ought to have preserved those claims by advising the court of its concerns with its counsel's performance—during the pendency of the *Final Application* proceeding, thus enabling the court to have tried the "inseparably related" claims together.  *See Capitol*

---

[27] *But see Sunrise Energy Co. v. Maxus Gas Mktg.* (*In re Sunpacific Energy Mgmt., Inc.*), 216 B.R. 776, 779 (Bankr. N.D. Tex. 1997) (a preference action is not one that "could have been brought at the same time as" a prior confirmation hearing for the purposes of res judicata because the confirmation process constitutes a contested matter, whereas a preference action must be commenced as an adversary proceeding).  However, *Sunrise Energy* fails to recognize that in appropriate circumstances (i.e., when the claims are sufficiently related that under res judicata principles it would be unreasonable not to have pursued the one claim for adjudication with the other claim), the court can consolidate the two proceedings even though one claim is pursued via a contested matter proceeding and the other must be pursued via an adversary proceeding.

*Hill Group*, 569 F.3d at 493.   Otherwise, the later assertion of

the malpractice claims would essentially seek to nullify the

*Final Fee Order*, contrary to Restatement (Second) of Judgments

§ 22(2)(b).

C.

## THE 2007 AMENDMENT OF RULE
## 3007 DOES NOT ALTER THE OUTCOME

Fee applications are governed by Fed. R. Bankr. P. 2016(a),

not Fed. R. Bankr. P. 3007, which deals with objections to proofs

of claim, *see* 9 Collier on Bankruptcy ¶ 3007.01 (Richard Levin &

Henry J. Sommer eds., 16th ed. 2020).   Plainly Rule 3007 does not

apply to objections to fee applications because such an

application is not a proof of claim.   For example, Rule 3007(a)

requires that the objection be mailed "to the person most

recently designated on the claimant's original or amended proof

of claim as the person to receive notices," but a fee

application, not being a proof of claim, and not filed on the

Official Form for a proof of claim, includes no such

designation.[28]

Nevertheless, some decisions, such as *Intelogic Trace*,

erroneously treated a prior version of Rule 3007 as being

applicable to objections to fee applications in ruling on the res

---

[28]   *See supra* note 19 (describing the rules implementing the
requirements for awarding professional fees under 11 U.S.C.
§ 330(a)(1)).

46

judicata effect of a failure to try together any objection to a
fee application and a malpractice damages claim.  When *Intelogic
Trace* was decided in 2000, Rule 3007 provided:

> An objection to the allowance of a claim shall be in
> writing and filed.  A copy of the objection with notice
> of the hearing thereon shall be mailed or otherwise
> delivered to the claimant, the debtor or debtor in
> possession and the trustee at least 30 days prior to the
> hearing.  If an objection to a claim is joined with a
> demand for relief of the kind specified in Rule 7001, it
> becomes an adversary proceeding.

Although this older version of Rule 3007 made no mention of
proofs of claim, it was preceded (as now) by Rules 3001 through
3006 dealing with proofs of claim, and it was evident that, as
now, Rule 3007 dealt with objections to proofs of claim.[29]  In
contrast, administrative expense claims were governed in 2000, as
now, by Rule 2016(a), and Rule 2002(a)(6) governed notice of
hearings on fee applications.  Rule 2002(a)(6) would be rendered
surplusage if Rule 3007 (which included its own notice
requirements) governed objections to fee applications, thus
violating the canon against surplusage.  *See City of Chicago v.
Fulton*, 141 S. Ct. 585, 591 (2021).  Like the current Rule 3007,

---

[29]  Under 11 U.S.C. § 501(a) and Rule 3001(a), a proof of
claim is what a creditor files to assert a claim in a bankruptcy
case.  The definition of "creditor" in 11 U.S.C. § 101(10) does
not include the holder of an administrative expense claim under
11 U.S.C. § 503.  As now, Rule 3007 was contained in the Rules'
Part III (Claims and Distribution to Creditors and Equity
Interest Holders; Plans), which deals with claims of creditors,
not administrative expense claims.

the older version of Rule 3007, in force when *Intelogic Trace* was
decided, did not apply to fee applications.

Trigee emphasizes that in *Intelogic Trace*, 200 F.3d at 389-
90, the Court of Appeals pointed to the version of Rule 3007 then
in effect as applicable to the objection to the fee application
at issue, and relied on Rule 3007 as one basis for concluding
that the debtor could have raised its malpractice damages claims
in defending against the fee application.  The Court of Appeals
reasoned that had the debtor objected to the fee application and
included with its objection a claim for monetary damages on
account of alleged malpractice, the matter, under Rule 3007,
would have become an adversary proceeding.  This erroneous
reliance on Rule 3007 in *Intelogic Trace* was followed in
*Iannochio*, 242 F.3d at 48, and in *Grausz v. Englander*, 321 F.3d
467, 474 (4th Cir. 2003).  However, for the same reasons as here,
and in *Capitol Hill Group*, res judicata would still have applied
in those decisions even if Rule 3007 had been viewed (correctly)
as inapplicable.[30]

In 2007, before Trigee commenced its bankruptcy case in
2012, Rule 3007 was amended to provide in relevant part:

---

[30]  In *Capitol Hill Group* (a 2009 decision issued after Rule
3007 had been amended, but involving a case in which the fee
proceedings in the Bankruptcy Court concluded before Rule 3007
changed), the Court of Appeals did not rely on the old Rule 3007
as a basis for its decision.

**(b) Demand for relief requiring an adversary proceeding**

> A party in interest shall not include a demand for relief
> of a kind specified in Rule 7001 in an objection to the
> allowance of a claim, but may include the objection in an
> adversary proceeding.

Trigee relies on this limitation to emphasize that its malpractice claims could not have been included in any objection to the *Final Application* it might have filed in the main bankruptcy case. As just noted, Rule 3007 does not and did not apply to fee applications. Even if Rule 3007(b) did apply to the *Final Application*, it provides that a party in interest may include an objection to a claim in an adversary proceeding (as distinct from the main bankruptcy case). Accordingly, if Rule 3007(b) did apply, Trigee's argument is plainly without merit: under Rule 3007(b), Trigee could have included an objection to the *Final Application* in an adversary proceeding asserting Trigee's malpractice damages claims. Thereby, an objection to the fee application could have been pursued in the same proceeding as Trigee's claim for malpractice damages.

If, as I have concluded, Rule 3007(b) did not apply to the *Final Application*, the result is nevertheless the same: Trigee's argument does not succeed. First, as a practical matter, Trigee likely would have been permitted to include an objection to the *Final Application* in an adversary proceeding asserting its malpractice claims. *See In re Fagan*, 559 B.R. at 727, and cases

cited in n.22, *supra*.   Thereby the two matters would still have
been tried in the same proceeding.

Second, the court possessed other procedural mechanisms that
would have allowed Trigee to try its malpractice damages claims
in the litigation of any objection that Trigee might have filed
to the *Final Application* even if the two matters were not pursued
together in an adversary proceeding complaint.   *See Weinberg*, 699
F. App'x at 121 (res judicata applied in light of ability to
consolidate a contested matter with an adversary proceeding);
*Paige*, 610 F.3d at 875 (noting the authority under Rule 9014 to
direct that Part VII Rules shall apply to a contested matter, and
concluding that, accordingly, the fee application hearing was an
effective forum for pursuing the debtor's malpractice claims).
Trigee had an obligation to use those options in order to avoid
res judicata.

Contrary to Trigee's view, the Advisory Committee Note to
the 2007 amendments of Rule 3007 does not support its position.
Instead, the Note strengthens the conclusion that procedural
mechanisms existed that would have permitted Trigee to litigate
any objection it might have filed to the *Final Application* with
an adversary proceeding asserting its malpractice damages claims.
The Advisory Committee Note states in relevant part:

> The . . . amendment prohibits a party in interest from
> including in a claim objection a request for relief that
> requires an adversary proceeding.   A party in interest
> may, however, include an objection to the allowance of a

50

claim in an adversary proceeding.  Unlike a contested
matter, an adversary proceeding requires the service of
a summons and complaint, which puts the defendant on
notice of the potential for an affirmative recovery.
Permitting the plaintiff in the adversary proceeding to
include an objection to a claim would not unfairly
surprise the defendant as might be the case if the action
were brought as a contested matter that included an
action to obtain relief of a kind specified in Rule 7001.

The rule as amended does not require that a party
include an objection to the allowance of a claim in an
adversary proceeding.  **If a claim objection is filed
separately from a related adversary proceeding, the court
may consolidate the objection with the adversary
proceeding under Rule 7042.**

(emphasis added).[31]  It is Rule 7042 (making Fed. R. Civ. P. 42

applicable in adversary proceedings) and Rule 9014(c), making

Rule 7042 applicable to contested matters (such as an objection

to a claim or to a fee application), and not Rule 3007(b), that

are the grounds for the Advisory Committee Note's observation

that the court may consolidate an objection to a claim with an

adversary proceeding.[32]  The Advisory Committee's observation

regarding consolidation would be equally true when an objection

_____

[31]  Trigee argues that the Note's indication that Rule
3007(b) "does not require that a party include an objection to
the allowance of a claim in an adversary proceeding" means that
if Trigee had pursued an objection to the *Final Application*,
Trigee was not required to simultaneously pursue its malpractice
claims in order to avoid res judicata.  However, that argument is
without merit because Rule 3007(b) does not purport to address
the issue of res judicata.

[32]  Rule 7042 authorizes the consolidation of adversary
proceedings involving common questions of law or fact, and the
joining of "any or all matters at issue" within such proceedings.
*See supra* p. 35 (further discussing Rules 7042 and 9014).

to a final fee application is pending and the debtor brings an
adversary proceeding asserting malpractice damages claims (even
though the Note addressed Rule 3007 objections to claims, not
objections to fee applications).[33]  It follows that res judicata
applies here even though an objection to the *Final Application*
could not have included an affirmative request to recover
malpractice damages.

As in *Capitol Hill Group*, procedures were available to
Trigee to contest the *Final Application* and to assert its
malpractice damages claims.  That Trigee did not take advantage
of those procedures does not alter the fact that it could have
done so.

D.

RES JUDICATA APPLIED EVEN THOUGH NO
OBJECTION WAS RAISED TO THE *FINAL APPLICATION*

Trigee argues in its reply to the opposition to the *Motion
for Reconsideration* that this case is unlike *Capitol Hill Group*
because it never filed an objection to the *Final Application*.
*Reply* at 6-7.  The *Final Fee Order* was a final judgment
adjudicating Lerch Early's entitlement to fees even though the

---

[33]  *Covert*, 779 F.3d at 244, involved a bankruptcy case
commenced in 2008, after Rule 3007 had been amended.  The Court
of Appeals had no difficulty concluding that res judicata applied
because the plaintiffs could have brought an adversary proceeding
asserting their affirmative claims for damages during the pending
contested matter.

*Final Application* did not result in a dispute between parties.[34]

Accordingly, the court properly rejected Trigee's argument in the

*Memorandum Decision* of September 23, 2016, explaining:

> That the *Order Granting Final Application* granted the
> *Final Application* as unopposed, does not change the
> result. *See Riehle v. Margolies*, 279 U.S. 218, 225
> (1929) ("A judgment of a court having jurisdiction of the
> parties and of the subject-matter operates as res
> judicata, in the absence of fraud or collusion, even if
> obtained upon a default." (citations omitted)); *Law
> Offices of Jerris Leonard, P.C. v. Mideast Sys., Ltd.*,
> 111 F.R.D. 359, 361 (D.D.C. 1986) (ruling that a judgment
> in favor of a law firm against its client for attorney's
> fees, as a matter of res judicata, barred that client's
> later malpractice action even if the client defaulted in
> the law firm's action to recover fees).

*Mem. Dec.* 35-36.  Trigee does not attempt to demonstrate error in

the court's explanation for rejecting Trigee's argument.

Trigee had only 21 days (until January 31, 2014) to oppose

the *Final Application* filed on January 10, 2014.  However,

outside of bankruptcy, once a law firm commences a **civil action**

**to recover fees**, thereby putting the quality of its services at

issue, the doctrine of res judicata requires the client to raise

its malpractice damages claims in the civil action if those

claims are to be preserved.  *See Law Offices of Jerris Leonard*,

111 F.R.D. at 361.  The same ought to apply in a bankruptcy case

when a law firm files a **final fee application to recover fees**.

---

[34]   Moreover, the court was obligated to review the *Final
Application* in determining that the requested fees were allowable
under 11 U.S.C. § 330(a) even though there was no objection to
the *Final Application*.  *See Busy Beaver*, 19 F.3d at 843.

The three-year statute of limitations protects against claims becoming stale, but it is not a safe harbor from this res judicata principle.

Moreover, Trigee was aware since the hearing in the main bankruptcy case on November 13, 2013, that there may have been malpractice.  Accordingly, it had 79 days after that hearing to investigate its possible malpractice damages claim before the January 31, 2014 deadline to oppose the *Final Application*.  In any event, "even if [the debtor] had only informed the bankruptcy court of its concerns and not immediately sought affirmative relief for malpractice, the bankruptcy court could have stayed the fee hearing and permitted time for discovery and development under the procedures available in Part VII of the Bankruptcy Rules," *Intelogic Trace*, 200 F.3d at 390, and, alternatively, Trigee could have asked the court to reserve its malpractice damages claims for later adjudication such that res judicata would not apply.  *See Paige*, 610 F.3d at 875.

E.

EVEN IF THE MALPRACTICE DAMAGES CLAIMS
WOULD HAVE BEEN NON-CORE IN NATURE, OR WOULD HAVE
ENTAILED A RIGHT TO A JURY TRIAL, RES JUDICATA STILL APPLIES

With respect to the issue of whether procedural mechanisms existed that would have allowed Trigee to assert its malpractice damages claims in defending against the *Final Application*, Trigee raised a new argument for the first time in its *Sur-Reply to*

54

*Defendants' Sur-Reply in Further Opposition to Plaintiff's Motion for Reconsideration* (Dkt. No. 136 filed on January 22, 2021). Trigee notes that the *Final Application* was a core proceeding in which Trigee and Lerch Early had no right to a jury trial, but that any adversary proceeding that Trigee could have brought pursuing malpractice damages claims would have been treated as a non-core proceeding and one in which Trigee would have been entitled to a jury trial.  Accordingly, Trigee argues that the two proceedings could not have been tried together, and that it follows that res judicata cannot apply.

The defendants have not had an opportunity to respond to this new argument, but it is clear that res judicata applies even if Trigee's malpractice damages claims would have been non-core and even if Trigee would have been entitled to a jury trial had Trigee requested one.

*1.  Jurisdiction and Authority to Decide Bankruptcy Proceedings*.  Putting this new argument in context requires a review of the jurisdiction and authority of the District Court and of the Bankruptcy Court to hear and decide bankruptcy proceedings.  Jurisdiction over bankruptcy proceedings rests on 28 U.S.C. § 1334(b), which provides (with exceptions of no relevance here) that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  In

55

turn, 28 U.S.C. § 157(a) allows the District Court to refer such
proceedings to the Bankruptcy Court.[35]  However, under 28 U.S.C.
§ 157(d), "[t]he district court may withdraw, in whole or in
part, any case or proceeding referred under this section, on its
own motion or on timely motion of any party, for cause shown."

With the consent of the parties, a bankruptcy judge may hear
and decide a non-core proceeding.[36]  Absent such consent, a
bankruptcy judge may hear a non-core proceeding and issue
proposed findings of fact and conclusions of law for the District
Court's de novo review.[37]  In contrast, a bankruptcy judge is

---

[35]  In this district, DCt.LBR 5011-1(a) provides: "Pursuant
to 28 U.S.C. § 157(a), all cases under Title 11 and all
proceedings arising under Title 11 or arising in or related to a
case under Title 11 are referred to the bankruptcy judges of this
District."  In other words, by local rule, the District Court has
referred to the Bankruptcy Court all proceedings falling within
the District Court's jurisdiction under 28 U.S.C. § 1334(b).

[36]  28 U.S.C. § 157(c)(2) provides that "the district court,
with the consent of all the parties to the proceeding, may refer
a proceeding related to a case under title 11 to a bankruptcy
judge to hear and determine and to enter appropriate orders and
judgments, subject to review under section 158 of this title."

[37]  28 U.S.C. § 157(c)(1) provides:

A bankruptcy judge may hear a proceeding that is not a
core proceeding but that is otherwise related to a case
under title 11.  In such proceeding, the bankruptcy judge
shall submit proposed findings of fact and conclusions of
law to the district court, and any final order or
judgment shall be entered by the district judge after
considering the bankruptcy judge's proposed findings and
conclusions and after reviewing de novo those matters to
which any party has timely and specifically objected.

authorized by statute to hear and decide core proceedings listed
in 28 U.S.C. § 157(b)(2), such as a fee application.[38]  However,
by reason of Article III of the Constitution, a bankruptcy judge
may not, unless the parties consent, decide certain matters even
though they are designated as core proceedings under 28 U.S.C.
§ 157(b)(2).  *See Stern v. Marshall*, 564 U.S. 462 (2011).
Nevertheless, such a matter may be treated as a non-core
proceeding that the bankruptcy judge may decide upon consent of
the parties or, absent such consent, the bankruptcy judge may
issue proposed findings of fact and conclusions of law under
§ 157(c)(1).  *See Exec. Benefits Ins. Agency v. Arkison*, 573 U.S.
25, 36 (2014) ("The statute permits *Stern* claims to proceed as
non-core within the meaning of § 157(c).").

As held in *Capitol Hill Group*, 569 F.3d at 489-90 (citations
omitted), "malpractice claims against court-appointed
professionals stemming from services provided in the bankruptcy
proceeding are 'inseparable from the bankruptcy context,'" and
adversary proceedings pursuing such claims "constitute . . .
proceeding[s] 'arising in' the bankruptcy case.  Such claims

___

[38]   28 U.S.C. § 157(b)(1) provides:

Bankruptcy judges may hear and determine all cases under
title 11 and all core proceedings arising under title 11,
or arising in a case under title 11, referred under
subsection (a) of this section, and may enter appropriate
orders and judgments, subject to review under section 158
of this title [dealing with appeals of such orders and
judgments]."

57

therefore fall within the bankruptcy jurisdiction of the federal courts." "Arising in" proceedings are viewed as core proceedings.[39]  Accordingly, a debtor's claim for damages against its lawyers that alleges malpractice as to their work in its bankruptcy case is a core proceeding.[40]  Nevertheless, had Trigee brought an adversary proceeding asserting its malpractice damages claims during the pendency of the *Final Application*, *Stern* might have required that the adversary proceeding be treated as a non-core proceeding regarding the bankruptcy judge's authority to decide the claims.  *See Loveridge v. Hall* (*In re Renewable Energy Dev. Corp.*), 792 F.3d 1274 (10th Cir. 2015).  *But see Frazin v. Haynes & Boone, L.L.P. (In re Frazin)*, 732 F.3d 313, 322 (5th Cir. 2013) (stating that "the resolution of the fee application proceedings necessarily resolved the malpractice counterclaim. Therefore, under *Stern*, the bankruptcy court had the authority to enter a final judgment rejecting Frazin's malpractice claim on its merits.").  I will assume, without deciding, that *Stern* would

---

[39]  *See Southmark Corp. v. Coopers & Lybrand* (*In re Southmark Corp.*), 163 F.3d 925, 930 (5th Cir. 1999) (citing *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 97 (5th Cir. 1987)). Moreover, the list of core proceedings includes "matters concerning the administration of the estate," "allowance or disallowance of claims against the estate," and "other proceedings affecting the liquidation of the assets of the estate."  28 U.S.C. § 157(b)(2)(A), (B), and (O).

[40]  *See Southmark Corp.*, 163 F.3d at 930-32.  *See also Capitol Hill Group*, 569 F.3d at 489-90; *Schultze v. Chandler*, 765 F.3d 945, 948 (9th Cir. 2014); *Baker v. Simpson*, 613 F.3d 346, 350 (2d Cir. 2010); *Grausz,* 321 F.3d at 471-72.

have required me to treat any malpractice damages claims Trigee

might have asserted during the pendency of the *Final Application*

as a non-core proceeding.

Some courts have held that a debtor has no right to a jury

trial upon filing an adversary proceeding complaint asserting its

legal malpractice damages claims during the pendency of a fee

application.[41]  Nevertheless, I will assume, without deciding,

that Trigee would have had a right to a jury trial had it filed

an adversary proceeding asserting its legal malpractice damages

claims during the pendency of the *Final Application*.  Without the

consent of the parties, the bankruptcy judge could not have

conducted the jury trial.[42]

---

[41]   *See*, *e.g.*, *Billing v. Ravin, Greenberg & Zackin, P.A.*,
22 F.3d 1242, 1253 (3d Cir. 1994):

> We hold that an allegation of legal malpractice raised as
> a defense to post-petition fees for bankruptcy counsel
> likewise falls within the process of the allowance and
> disallowance of claims.  The debtors have no Seventh
> Amendment right to trial by jury, not because of specific
> waiver of Seventh Amendment rights, but because their
> claim has been converted from a legal one into an
> equitable dispute over a share of the estate.

[42]   28 U.S.C. § 157(e) provides:

> If the right to a jury trial applies in a proceeding that
> may be heard under this section by a bankruptcy judge,
> the bankruptcy judge may conduct the jury trial if
> specially designated to exercise such jurisdiction by the
> district court and with the express consent of all the
> parties.

However, as explained below, Trigee could still have asserted its malpractice damages claims in defending against the *Final Application*, with a trial of both matters conducted by the District Court.

*2. Core Versus Non-Core Distinction.*  The core versus non-core distinction concerns whether a bankruptcy judge has authority (absent consent of the parties) to decide a claim that the District Court has referred to the Bankruptcy Court.  It has nothing to do with subject matter jurisdiction under 28 U.S.C. § 1334(b).

The District Court has authority to decide both core and non-core proceedings within that jurisdiction, and has authority to withdraw proceedings from the Bankruptcy Court.  The better reasoned decisions conclude that an order in a core proceeding has res judicata effect with respect to a claim of a non-core nature that could and should have been filed during the litigation of the core proceeding.  *See Plotner v. AT & T Corp.*, 224 F.3d 1161, 1173–74 (10th Cir. 2000); *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 197 (3d Cir. 1999); *Robertson v. Isomedix, Inc.* (In *re Int'l Nutronics, Inc.*), 28 F.3d 965, 969–70 (9th Cir. 1994); *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 483 (6th Cir. 1992); *Sure-Snap Corp. v. State Street Bank & Tr. Co.*, 948 F.2d 869, 875 (2d Cir. 1991);

60

*Davenport I*, 296 F. Supp. 3d at 255-56.[43]  Accordingly, the core versus non-core distinction between the two types of proceedings is not a bar to trying a debtor's malpractice damages claims along with its counsel's fee application, or, therefore, to the applicability of res judicata.

   *3.  Jury Character Versus Non-Jury Character Distinction*. There was no right to a jury trial regarding the *Final Application*, whereas I am assuming that Trigee would have had the right to demand a jury trial of any malpractice damages claim it asserted during the pendency of the *Final Application*.  However, the jury versus non-jury difference between the two proceedings has nothing to do with subject matter jurisdiction to decide the two matters, and (like the core versus non-core distinction) only affects whether the bankruptcy judge would have had authority (absent consent of the parties) to try and decide both of them. The District Court has authority to decide both jury and non-jury bankruptcy proceedings falling within the District Court's bankruptcy jurisdiction, and has authority to withdraw such proceedings from the Bankruptcy Court.  Therefore, procedural

---

   [43]  Although the Seventh and the Fifth Circuits concluded differently in *Barnett v. Stern*, 909 F.2d 973 (7th Cir. 1990), and *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183 (5th Cir. 1990), those Circuits, as noted in *Davenport I*, 296 F. Supp. 3d at 255 n.6, have subsequently questioned those holdings.  In *Davenport II*, 316 F. Supp. 3d at 68 n.8, the District Court adhered to the view that the core versus non-core distinction had no impact on the analysis of the res judicata issue.

mechanisms are available to permit a final fee application for professional services (a non-jury matter) and a malpractice damages claim relating to those services (presumed here to be a jury matter) to be tried together.  If Trigee had filed, during the pendency of the *Final Application*, an adversary proceeding complaint asserting its malpractice damages claims, the District Court could have withdrawn both matters from the Bankruptcy Court such that both could be tried together.[44]  Accordingly, any right Trigee would have had to a jury trial on the malpractice damages claims is not a reason to hold that res judicata does not apply. *See Grausz v. Englander*, 321 F.3d at 475.[45]

---

[44]    Pursuant to Fed. R. Civ. P. 39(c), the District Court could have treated the jury as an advisory jury on the *Final Application*.  Alternatively, the District Court could have first tried the malpractice damages claims and then decided the *Final Application*, or, it could have referred the *Final Application* back to the Bankruptcy Court for a decision on the *Final Application*, taking into account any collateral estoppel effect of the jury verdict as to the malpractice damages claims.

[45]    That the *Final Fee Order* was issued without a jury trial does not preclude it from having res judicata effect on the malpractice damages claims asserted in this later-filed adversary proceeding.  See *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 150 (2015) ("As to the Seventh Amendment, . . . the right to a jury trial does not negate the issue-preclusive effect of a judgment, even if that judgment was entered by a juryless tribunal.").

F.

THE LACK OF "WET SIGNATURES" ON TRIGEE'S SCHEDULES

Trigee contends that the defendants failed to obtain a "wet signature" of Trigee's principal, Johnnie Mae Durant, on its schedules.  I will assume, without deciding, that this contention is correct.  The filing of the schedules without their having been actually signed as represented on the electronically filed version of the schedules resulted in a misrepresentation to the court and violated the requirement that schedules bear an actual signature.  See Fed. R. Bankr. P. 1008.

However, as noted in part II above, the harm to Trigee proximately arose from SGA's claim not being listed on Trigee's schedules as disputed, not from the failure to have Johnnie Mae Durant actually sign the schedules nor from the misrepresentation on the electronically filed version of the schedules that the schedules had been signed.  As this court previously noted in its *Memorandum Decision* addressing Lerch Early's *Motion to Dismiss*:

> Only claims based on identified acts of substandard services in the representation of Trigee that proximately caused Trigee harm might constitute malpractice claims upon which relief can be granted (if they were not barred by res judicata).  *See Herbin v. Hoeffel*, 806 A.2d 186, 194 (D.C. 2002) ("To demonstrate that an attorney has been negligent, a party must prove: (1) that there is an attorney-client relationship; (2) that the attorney neglected a reasonable duty; and (3) that the attorney's negligence resulted in and was the proximate cause of a loss to the client."  (Citation omitted.)).

63

*Mem. Dec.* 27-28.  With respect to the malpractice damages claim
relating to the handling of the SGA claim and the accrual of that
malpractice damages claim before Lerch Early filed its *Final
Application* (and the resulting res judicata bar against pursuit
of the malpractice damages claim), the failure to have Johnnie
Mae Durant actually sign the schedules was of no consequence.
While it is arguable that, absent this failure, Ms. Durant would
have insisted that the schedules be revised before filing to list
SGA's claim as disputed (i.e., but for the failure, the claim
would have been listed as disputed), the failure would not be the
proximate cause of Trigee's injury.  Instead, Sherman's filing of
the schedules without listing SGA's claim as disputed is what
proximately caused the loss of the statute of limitations as a
defense and the allowance of SGA's claim.  Had Sherman scheduled
the claim as disputed, the statute of limitations defense would
have been preserved, and it would not have mattered that Lerch
Early had failed to have Ms. Durant actually sign the schedules.
Accordingly, the malpractice claim regarding the scheduling of
SGA's claim rests on the failure to schedule the claim as
disputed, not on the lack of a "wet signature" on the schedules.

G.

THE MALPRACTICE DAMAGES CLAIMS AGAINST LERCH EARLY,
BUT NOT THOSE AGAINST SHERMAN, ACCRUED PRIOR TO
THE FILING OF LERCH EARLY'S *FINAL APPLICATION*

Citing *Newman v. Crane, Heyman, Simon, Welch & Clar*, 590
B.R. 457, 467 (N.D. Ill. 2018), Trigee emphasizes that state law
as to when a malpractice damages claim accrues, and not federal
law concerning res judicata, determines when a malpractice
damages claim accrued in analyzing whether res judicata bars it.
However, Trigee has not discussed the requirements under District
of Columbia law regarding when a malpractice damages claim
accrues other than to raise two points in the following argument:

> In this case, this Honorable Court did not approve LEB's
> final fee application until February 4, 2014.  That final
> fee application only applied to services performed
> through June 30, 2013.  This Honorable Court did not even
> allow the SGA claim until November 13, 2013 and did not
> issue an order on a related motion for reconsideration
> until on or about May 15, 2014.  Accordingly, a dispute
> exists as to whether the Plaintiff's legal malpractice
> claim accrued as of the time that this Honorable Court
> granted the final fee application, such that res judicata
> should not apply under the logic of the *Davenport* and
> *Newman* decisions.

*Reply* at 10.  Trigee correctly notes that the court did not allow
SGA's claim until the hearing of November 13, 2013, but that is
not a point in its favor.  The hearing preceded the filing of the
*Final Application* in January 2014, and, as Trigee notes, the
approval of the *Final Application* on February 4, 2014.  The
injury occurred *before* the pendency of the *Final Application*.
Trigee's other point is that its motion for reconsideration of

65

the allowance of SGA's claim, under Fed. R. Bankr. P. 9024, was
not denied until after the entry of the *Final Fee Order*.  As will
be seen, the pendency of that motion to reconsider the November
2013 ruling that injured Trigee is not a sufficient basis for
treating the malpractice damages claim as accruing after the
entry of the *Final Fee Order*.

The only reasonable conclusion based on the record,
including the transcript of the hearing of November 13, 2013, is
that before the filing of the *Final Application* in January 2014,
Trigee was on inquiry notice regarding its malpractice damages
claim arising from the failure to schedule SGA's claim as
disputed and the entry of an order allowing SGA's claim.  As will
be seen, such inquiry notice sufficed under District of Columbia
law to cause the accrual of its malpractice damages claim against
Lerch Early prior to the filing of the *Final Application*.  Trigee
has not attempted to show to the contrary, and, in that
circumstance, no injustice will arise upon denial of its *Motion
for Reconsideration.*  However, pursuant to the continuous-
representation rule, Trigee's malpractice damages claims against
Sherman did not accrue until his representation of Trigee in its
bankruptcy case terminated.

District of Columbia law controls when Trigee's malpractice damages claim accrued.[46]  *See Newman*, 590 B.R. at 464 (citing *Micro-Time Mgmt. Sys., Inc. v. Allard & Fish, P.C. (In re Micro-Time Mgmt. Sys., Inc.)*, Case No. 91-2261, 1993 WL 7524, at *5 (6th Cir. Jan. 12, 1993)) ("State law thus governs when the Trustee could bring its malpractice claim, even though federal law will govern the res judicata analysis."). "Generally, a cause of action is said to accrue at the time injury occurs." *Bussineau v. President & Dirs. of Georgetown Coll.*, 518 A.2d 423, 425 (D.C. 1986) (citing *Shehyn v. District of Columbia*, 392 A.2d 1008, 1013 (D.C. 1978); *Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 994 (D.C. 1978)). "However, in cases where the relationship between the fact of injury and the alleged tortious conduct is obscure as to when the injury occurs, a 'discovery rule' applies to determine when the malpractice cause of action accrued." *Id.*  "[F]or a cause of action to accrue where the discovery rule is applicable, one must know or by the exercise of reasonable diligence should know (1) of the injury, (2) its cause in fact, and (3) of some evidence of

---

[46]  For federal res judicata purposes under *Capitol Hill Group*, 569 F.3d at 491 (quoting *Grausz*, 321 F.3d at 474), "[w]e look at the date the final fee order was entered . . . and ask whether by that time [the debtor] knew or should have known there was a real likelihood that [it] had a malpractice claim."  As will be seen, that matches the requirement regarding accrual of a malpractice damages claim under District of Columbia law.

wrongdoing." *Id.* at 435. *Accord Ray v. Queen*, 747 A.2d 1137, 1141 (D.C. 2000).

Thus, a cause of action will accrue once a plaintiff has knowledge of "some injury," its cause in fact, and "some evidence of wrongdoing." *Colbert v. Georgetown Univ.*, 641 A.2d 469, 473 (1994) (en banc). *See also Morton v. Nat'l Med. Enters., Inc.*, 725 A.2d 462, 468 (D.C. 1999). In other words, a legal malpractice damages claim becomes ripe when there is client knowledge of some injury, its cause, and related wrongdoing. *Bleck v. Power*, 955 A.2d 712, 716 (D.C. 2008). The test is whether the plaintiff was on "inquiry notice that she **might have** suffered an actionable injury." *Bussineau*, 518 A.2d at 427 (emphasis added). *Accord Hendel v. World Plan Exec. Council*, 705 A.2d 656, 661 (D.C. 1997) ("The discovery rule does not, however, give the plaintiff carte blanche to defer legal action indefinitely **if she knows or should know that she may have suffered injury and that the defendant may have caused her harm.**") (emphasis added).

*1. The Injury Component of the Discovery Rule.* As held in *Bleck*, 955 A.2d at 715, "[t]he term **'injury' encompasses** any 'loss or impairment of a right, remedy or interest, or **the imposition of a liability.**'" (quoting 3 Mallen & Smith, *Legal Malpractice* § 23:11, at 354 (2008 ed.) ("These are the spectrum of injuries sustained by clients.")) (emphasis added) (other

68

citations omitted).  As noted in *Olds v. Donnelly*, 696 A.2d 633, 640 (N.J. 1997), "[t]he majority of courts hold that when attorney malpractice occurs during the course of litigation, the cause of action accrues on entry of an adverse judgment in the trial court."[47]  Here, at the latest, Trigee suffered an injury on November 26, 2013, upon entry of the order allowing SGA's claim, which, under *Bleck v. Power*, 955 A.2d at 715, was an imposition of liability for the purpose of when a malpractice damages claim accrued.[48]

2.  *The Requirement Under the Discovery Rule that Trigee Have Been Aware that an Injury May Have Occurred*.  Trigee learned at the hearing of November 13, 2013, that the court intended to enter an order allowing SGA's claim, and that SGA, as a consequence of being the holder of an allowed claim, was being allowed to file a competing Chapter 11 plan.  Moreover, on December 19, 2013, the Clerk, through the Bankruptcy Noticing

---

[47]  *See also Poole v. Lowe*, 615 A.2d 589, 593 (D.C. 1992), citing *Wettanen v. Cowper*, 749 P.2d 362, 365 (Alaska 1988), with approval, as standing for the proposition that the "statute of limitations commenced from entry of judgment against plaintiff by trial court upon accepting settlement which plaintiff did not authorize or have knowledge of, even though new counsel moved to set aside judgment and took subsequent appeal."

[48]  As illustrated by *Bleck v. Power*, 955 A.2d at 716, a malpractice cause of action may accrue even prior to the entry of the judgment in the action in which the malpractice occurred. However, Trigee's injury arose no later than the entry of the order allowing SGA's claim, and that suffices to hold that res judicata bars the malpractice damages claim as long as the other elements of the discovery rule are met.

Center, mailed Trigee a copy of the order granting SGA's motion
to extend the deadline for filing a competing plan of
reorganization.  Trigee was thus aware of the entry of the order
allowing SGA's claim and thereby imposing a liability against it.
Trigee was thus aware of the injury it had suffered arising from
any acts of negligence.

3.   *The Requirement Under the Discovery Rule that Trigee
Should Have Known of Some Evidence of Wrongdoing*.  Under the
discovery rule, for the malpractice damages claim to accrue,
Trigee must have had reason to know that the failure to schedule
SGA's claim as disputed was wrongdoing.  Again, the issue is
whether Trigee had "inquiry notice that [it] **might have** suffered
an actionable injury."  *Bussineau*, 518 A.2d at 427 (emphasis
added).  In other words, a malpractice damages claim accrues "at
such time a prospective plaintiff gains inquiry notice that
wrongdoing **may be involved**."  *Bussineau*, 518 A.2d at 427-28
(emphasis added).

Trigee learned by August 2013 that SGA's claim had not been
scheduled as disputed.  Even if it was not yet aware that the
failure to schedule SGA's claim as disputed would, as a matter of
law, be a basis for SGA to nullify any statute of limitations
defense, that changed when Trigee's principal officers (Johnnie
Mae Durant and Oswald Durant) attended the hearing of
November 13, 2013, at which SGA's counsel, Rost, argued that the

statute of limitations defense did not apply because SGA's claim had not been scheduled as disputed.  As stated in *Wagner v. Sellinger*, 847 A.2d 1151, 1154 (D.C. 2004), "knowledge is deemed sufficient if the plaintiff has **reason to suspect that the defendant did something wrong,** even if the full extent of the wrongdoing is not yet known," citing *Morton*, 725 A.2d at 468-69 (emphasis added).  Here, Trigee has not argued that it was unaware after the hearing of November 13, 2013, that SGA's counsel, Rost, had contended that the statute of limitations was inapplicable to SGA's claim due to the failure of Lerch Early and Sherman to schedule that claim as disputed.  Rost's argument placed Trigee on notice that Lerch Early and Sherman might have done something wrong (in failing to schedule SGA's claim as disputed) because the omission might have made the statute of limitations unavailable as a defense to SGA's claim.

*4.  The Requirement Under the Discovery Rule of Having Reason to Know that the Negligent Act May Have Caused an Injury.* At the hearing of November 13, 2013, the court did not expressly rule on Rost's argument that, as a matter of law, the failure to schedule SGA's claim as disputed nullified the statute of limitations as a defense to SGA's claim.  However, at the hearing of November 13, 2013, Trigee was made aware that Rost took that position, and that the court would be entering an order allowing Trigee's claim (which ensued in the *Order Overruling Objection to*

*Claim of SGA Companies, Inc.* entered on November 26, 2013, an
order of which Trigee became aware long before the filing of the
*Final Application*).  In the words of *Hendel*, 705 A.2d at 661,
Trigee was on notice that the failure to schedule SGA's claim as
disputed "may have caused" Trigee the harm because it left the
statute of limitations unavailable as a defense.

It does not matter that the court had not ruled whether
Rost's argument was correct by the time that Lerch Early filed
its *Final Application*.  In *Weisberg*, 390 A.2d at 966, the
plaintiffs' former counsel failed to timely file their complaint
against the Government on a Federal Tort Claims Act ("FTCA")
claim.  As discussed in *Bleck*, 955 A.2d at 716, *Weisberg*, 390
A.2d at 995-96, held that "at the latest," once the statute of
limitations defense was raised, the plaintiffs' malpractice
damages claim against their former counsel accrued, even though
the actual dismissal of their FTCA claim occurred "well beyond
the point at which appellants suffered injury."  The plaintiffs
"as of that date were on actual notice of all the elements that
formed the basis of their [malpractice damages claim] . . . ."
*Bleck*, 955 A.2d at 716 n.13 (quoting *Weisberg*, 390 A.2d at 996).
That the wrongful act caused harm, *as a matter of law*, meant that
the injury attributable to the attorney's error could not be
viewed as "uncertain or inchoate" such as to toll the injury from

72

accruing.  *See Bleck*, 955 A.2d at 717 (quoting and distinguishing *Wagner*, 847 A.2d at 1156).

Here, the malpractice damages claim against Lerch Early accrued once SGA's claim was allowed, thereby injuring Trigee, and once Trigee was aware of Rost's argument that the failure to list SGA's claim as disputed rendered the statute of limitations defense invalid *as a matter of law*.  As in *Weisberg*, there was no need for a ruling on Rost's argument before the malpractice damages claim accrued:

- Trigee had already been injured by the allowance of the claim (the equivalent of a monetary judgment, which is treated as injury);

- Trigee was aware of that injury before the filing of the *Final Application;*

- Trigee was aware of Lerch Early's failure to schedule SGA's claim as disputed;

- Trigee was on inquiry notice, that (as Rost argued) the failure, *as a matter of law*, barred the statute of limitations as a defense;[49] and

---

[49]  Rost's argument at the hearing arguably placed Trigee on *actual* notice that it had a malpractice cause of action.  *See John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998) ("[T]he plaintiff has actual knowledge of the injury . . . where, for example, the defendant admits to having committed malpractice or the plaintiff is informed by another attorney of the malpractice.")  However, under District of Columbia law, the issue is whether Trigee was at least on *inquiry* notice that it might have a malpractice cause of action.

73

- Trigee knew that it had not authorized SGA's claim to be scheduled as not disputed and thus had reason to suspect that Lerch Early had done something wrong and that, if Rost's argument was valid, Trigee, as a result of that wrong, could not use the statute of limitations defense against the allowance of SGA's claim.[50]

5. *The Effect of Trigee's Right to Seek Reconsideration of the Allowance of SGA's Claim*. Trigee implicitly argues that Trigee's right to seek reconsideration of the allowance of SGA's claim tolled the accrual of its malpractice damages claim until after Lerch Early filed its *Final Application*. *Reply* at 10. However, the mere right to pursue a motion for reconsideration does not affect when a malpractice damages claim accrues, or negate the fact that the claim has accrued if it has already accrued. *See Bleck*, 955 A.2d at 717 (Rule 59(e) motion regarding dismissal of action did not suspend the accrual of the plaintiff's malpractice damages claims); *Knight v. Furlow*, 553

---

[50] In denying Trigee's motion to reconsider the order of November 26, 2013, allowing SGA's claim, the court ruled at the hearing of May 15, 2014, that Rost's argument was valid as a matter of law. In this malpractice proceeding, and any appeal therefrom, Lerch Early and Sherman remain free to attempt to show that Rost's argument was incorrect. If they succeed in doing so, the failure to have scheduled the claim as disputed could not be a basis for malpractice damages. However, even if Lerch Early and Sherman succeed in that regard, Trigee could not thereby seek to recover from SGA amounts Trigee had paid SGA on its claim: the order allowing SGA's claim would remain in place as it would be too late for Trigee to seek Rule 9024 relief from that order.

74

A.2d 1232, 1235 (D.C. 1989) (rejecting an argument "that a client
sustains no actionable injury until affirmance on appeal of an
adverse lower court judgment").  As the D.C. Circuit has noted:

> At most, the Westerman defendants' advice could have
> convinced a reasonable party in Seed's position that
> there existed some chance the injury could be resolved
> in further appeals.  But no reasonable client could
> conclude that the possibility of redressing an injury
> in further proceedings means that no injury exists in
> the first place.

*Seed Co. Ltd. v. Westerman*, 832 F.3d 325, 335 (D.C. Cir. 2016).

6.  *The Continuous-Representation Rule Tolled the Accrual of
Trigee's Malpractice Claims Against Sherman.*[51]  The *Memorandum
Decision* of September 23, 2016, held that the claims against
Lerch Early (the claims arising through June 30, 2013) were
barred by res judicata, despite Trigee's assertion that, based on
Sherman having continued to represent Trigee, the continuous-
representation rule required holding that the malpractice claims
against Trigee had not accrued when the court ruled on the *Final
Application*.  The *Memorandum Decision* held that the same claims
had to be dismissed as to Sherman as well (leaving only the
claims against Sherman relating to services he rendered after he
left Lerch Early), reasoning that:

---

[51]  "[U]nder the 'continuous representation rule,' a
client's legal malpractice claim 'does not accrue until the
attorney's representation concerning the particular matter in
issue is terminated" (even if the client knows before then that
her attorney has made an injurious error)."  *Bleck*, 955 A.2d at
717 (quoting *R.D.H. Commc'ns, Ltd. v. Winston*, 700 A.2d 766, 768
(D.C. 1997)) (footnote omitted).

> The law is well established that, with exceptions of no
> relevance here, the res judicata effects of a judgment
> with respect to claims against an employer extends in
> favor of an employee with respect to the same claims for
> which the employer was vicariously liable. *See*
> Restatement (Second) of Judgments § 51 (1982); *Brunacini
> v. Kavanagh*, 869 P.2d 821, 825 (N.M. Ct. App. 1993)
> (noting that when a law firm had previously brought an
> action for legal fees, the res judicata effect of the
> judgment in that action extended to bar a later
> malpractice action against an employee of the law firm);
> *Lober v. Moore*, 417 F.2d 714, 718 (D.C. Cir. 1969) ("[A]
> judgment excusing the master or principal from liability
> on the ground that the servant or agent was not at fault
> forecloses a subsequent suit against the latter on the
> same claim.").

*Mem. Dec.* 39.[52]

The *Memorandum Decision* was in error in that regard. First,
in contrast to *Lober v. Moore*, the dismissal of the claims
against Lerch Early was not on the basis of a finding that
Sherman committed no malpractice while employed at Lerch Early,
but on the basis that any claim against the law firm was barred
by res judicata because the claim ought to have been brought when
the law firm sought a final fee award.

Second, *Brunacini v. Kavanagh* did not involve an attorney
who continued to represent the plaintiff after leaving the law

---

[52]   The Memorandum Decision elaborated: "Stated another way,
res judicata protects not only Lerch Early but also Sherman, who,
as a Lerch Early employee, was in privy with Lerch Early. *See
Nevada v. United States*, 463 U.S. 110, 129 (1983) (holding that
res judicata bars subsequent action against privy of party who
prevailed in prior action); *Henry v. Farmer City State Bank*, 808
F.2d 1228, 1235 n.6 (7th Cir. 1986) (ruling that res judicata
barred claims against employees of a bank even though the bank
was the only plaintiff in the prior foreclosure proceeding)."

76

firm.   Accordingly, there was no occasion in *Brunacini* to address

the effect of the continuous-representation rule on whether a

judgment in favor of the law firm would preclude a judgment

against the lawyer as well.

Finally, in *Seed Co. Ltd. v. Westerman*, 832 F.3d at 333, the

Court of Appeals held, one month before the *Dismissal Order*, that

> the continuous-representation rule does not toll the
> statute of limitations on a claim against a firm after
> the attorney providing the representation leaves the
> firm and takes the client's business with her.   *See
> Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255, 275
> (2009); *Beal Bank, SSB v. Arter & Hadden, LLP*, 42
> Cal.4th 503, 66 Cal.Rptr.3d 52, 167 P.3d 666 (2007).
> In that situation, the client is no longer represented
> by the original firm.   The continuous-representation
> rule thus no longer tolls the statute of limitations
> for malpractice claims against that firm.

The Court of Appeals held, however, that the continuous-

representation rule did apply with respect to the lawyers who

left the firm.   *Id.* at 332.[53]

Under *Westerman*, the dismissal of malpractice claims against

a lawyer's former law firm does not preclude application of the

continuous-representation rule against the lawyer regarding the

same malpractice claims when the lawyer has continued to

---

[53]   Similarly, in *Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va.
2009), the plaintiffs sued both Rockwell and the law firm for
malpractice.   The Supreme Court of Appeals of West Virginia held
that the statute of limitations barred the malpractice claims
against the law firm.   But the court held that as to Rockwell, a
remand was necessary to determine whether, under the continuous-
representation rule, the malpractice claims against him had
accrued on a later date, making the action timely as to him.
*Id.* at 273.

represent the client in the same matter after leaving the law firm.  *Id.* at 332.  The rationale of the continuous-representation rule weighs in favor of that view.  "The rule aims to avoid putting a client in the position of having to choose between (i) disrupting an ongoing lawyer-client relationship to enable bringing a malpractice claim and (ii) continuing the relationship but relinquishing the claim."  *Id.* at 332.  Here, if Sherman had been sued after the claim accrued against the law firm, that would have disrupted the attorney-client relationship between Sherman and Trigee.

For all of these reasons, I will vacate the *Dismissal Order* as to Sherman.

### H.

### THE *FINAL FEE ORDER* CONTINUES TO HAVE RES JUDICATA EFFECT

The *Final Fee Order* in the bankruptcy case remains in effect.  Unless that order were to be vacated, it continues to have res judicata effect.  *See*, *e.g.*, Fed. R. Civ. P. 60(c)(2) (filing of a Rule 60(b) motion "does not affect the judgment's finality or suspend its operation").  Trigee has not filed a motion for relief from the *Final Fee Order* in the bankruptcy case, which suggests that it doubts that such a motion would be successful or would result in the *Final Fee Order* being vacated *in toto* such as to no longer have res judicata effect.

I.

UNRELATED MISCONDUCT OF SHERMAN AND LERCH
EARLY IS NOT A BASIS FOR VACATING THE *DISMISSAL ORDER*

Trigee points to a report issued by the Ad Hoc Hearing
Committee of the District of Columbia Court of Appeals' Board on
Professional Responsibility in a disciplinary proceeding against
Sherman.  The report details instances of misconduct of Sherman
in matters other than Trigee's bankruptcy case.  That reported
misconduct has no impact on whether it was proper to grant the
*Motion to Dismiss* in this adversary proceeding or on the
continuing res judicata effect of the *Final Fee Order*.

Trigee also alleges that Lerch Early has failed to comply
with the court's order issued in the bankruptcy case directing
Lerch Early to maintain adequate conflicts checking procedures.
That too has no impact on whether it was proper to grant the
*Motion to Dismiss* in this adversary proceeding or on the
continuing res judicata effect of the *Final Fee Order*.

V

CONCLUSION

On the current state of the record, Trigee's malpractice
damages claims against Lerch Early regarding services provided
through June 30, 2013, remain barred by res judicata: nothing in
the record suggests that Lerch Early is not entitled to summary
judgment dismissing the claims against it.  In that circumstance,
Trigee has not shown that harm or injustice would result if

reconsideration were denied as to Lerch Early.  Accordingly, I
decline to grant the *Motion for Reconsideration* with respect to
the claims against Lerch Early.

Discovery in this adversary proceeding concluded in July
2018.  Trigee failed until September 9, 2020, to raise in its
*Reply* its accrual argument regarding the malpractice damages
claim concerning the scheduling of SGA's claim.  *Reply* at 10.
That was fourteen days shy of four years after the court entered
the *Dismissal Order* on September 23, 2016.  This suggests that
aside from its erroneous argument that the malpractice damages
claim regarding the scheduling of SGA's claim could not accrue as
to Lerch Early until the court disposed of the *Motion to
Reconsider Allowance of Claim*, Trigee recognizes that it has no
basis for asserting that the malpractice damages claims against
Lerch Early regarding services rendered prior to July 1, 2013,
accrued after the *Final Application* was filed.

This proceeding has been pending since 2016, and discovery
came to a close almost three years ago.  Other than the grounds
asserted in the *Motion for Reconsideration*, Trigee has not raised
any other grounds for setting aside the *Dismissal Order* of
September 23, 2016, as to Lerch Early.  Unless Trigee were to
present new evidence or were to convince me that I have
overlooked something critical or committed plain error in denying
the *Motion for Reconsideration* as to Lerch Early, it appears that

it will be appropriate to enter a final judgment under Fed. R. Civ. P. 54(b) dismissing the malpractice damages claims against Lerch Early.

Based on the continuous-representation rule, I will vacate the dismissal of the claims against Sherman arising from his services while employed at Lerch Early.

It is thus

ORDERED that the *Motion for Reconsideration* (Dkt. No. 123) is DENIED with respect to Lerch Early, and the claims against it remain dismissed.  It is further

ORDERED that within 28 days after entry of this *Memorandum Decision and Order*, the parties shall file writings showing cause, if any they have, why the court ought not enter a final order under Fed. R. Civ. P. 54(b) dismissing Trigee's claims against Lerch Early.  It is further

ORDERED that the plaintiffs' *Motion for Reconsideration* (Dkt. No. 123) is GRANTED with respect to the claims against Jeffrey M. Sherman, and the *Dismissal Order* of September 23, 2016 (Dkt. No. 20) is amended to reflect that the *Motion to Dismiss* (Dkt. No. 3) is DENIED with respect to the claims against Sherman.

[Signed and dated above]

Copies to: All counsel of record; Office of United States Trustee.

F:\Common\TealER\Judge Temp Docs\Trigee Foundation v. Lerch Early etc. Mem Dec re Mtn to Reconsider Dismissal of Lerch Early_V1.wpd